IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-50876
_____


RAYMUNDO HERNANDEZ-RODRIGUEZ,

Petitioner-Appellant,

versus

KENNETH L. PASQUARELL, District
Director of the Immigration
and Naturalization Service,

Respondent-Appellee.


_____

Appeal from the United States District Court for the
Western District of Texas
_____

July 24, 1997

Before GARWOOD, WIENER and DEMOSS, Circuit Judges.

GARWOOD, Circuit Judge:

Petitioner-appellant Raymundo Hernandez-Rodriguez, an alien, in November 1987 was ordered excluded from the United States after attempting to import marihuana through the Del Rio port of entry. In April 1988, the exclusion order was affirmed by the Board of Immigration Appeals (the Board). Over a year later, Petitioner filed with the Board a motion to reopen his exclusion proceeding alleging that familial developments warranted the grant of discretionary relief pursuant to section 212(c) of the Immigration and Nationality Act. In December 1991, the Board denied Petitioner's motion on the basis of statutory ineligibility. Some

six months thereafter, Petitioner instituted the instant habeas corpus proceedings in the district court below challenging the Board's 1991 decision.  In August 1995, the district court denied the Petitioner's habeas application, from which action Petitioner brings this appeal.  We affirm.

### Facts and Proceedings Below

Petitioner is a citizen of Mexico who entered the United States in 1965 and became a lawful permanent resident on November 1, 1974.  He fathered five children with his wife, Irma Orona Hernandez, who is a United States citizen.  Their children were born on February 24, 1974 (Raymundo Jr.), May 20, 1975 (Francisco), April 20, 1980 (Albert), August 6, 1983 (Veronica), and April 18, 1986 (Juan).  Petitioner is a construction worker by trade, specializing in concrete.  He has worked in the Texas construction industry for most of his adult life.

The events giving rise to the instant habeas action began December 19, 1983, when Petitioner attempted to enter the United States as a returning resident at the port of entry in Eagle Pass, Texas.  Concealed in Petitioner's vehicle were twenty-eight pounds of marihuana.  On December 22, 1983, Petitioner was served with a "Notice to Applicant for Admission Detained for Hearing before an Immigration Judge" charging him with excludability under 8 U.S.C. § 1182(a)(23).[1]  Petitioner was also indicted for the underlying federal drug offense.  On March 15, 1984, in the United States

---

[1]     8 U.S.C. § 1182(a)(23) was the precursor to current section 1182(a)(2)(A)(i)(II) (West Supp. 1996), which permits exclusion for violations of laws relating to controlled substances.

2

District Court for the Western District of Texas (Del Rio Division), Petitioner was convicted of unlawfully, knowingly, and intentionally importing and causing to be imported a quantity of marihuana into the United States from Mexico in violation of 21 U.S.C. §§ 952(a), 960(a)(1). Petitioner was sentenced to 4 years' imprisonment, a special parole term of 4 years, and a fine of $1,000. The district court suspended the imprisonment, placed the Petitioner on probation for 5 years, and ordered him to perform 300 hours of community service.

In October 1985, while still on probation, Petitioner was again involved in a drug-related offense, culminating in his guilty plea on October 31, 1985, to a state charge of delivery of marihuana. The 204th Judicial District Court in Dallas County, Texas, sentenced Petitioner to two years' deferred adjudication. As a result of Petitioner's subsequent drug offense, the United States District Court for the Western District of Texas revoked his probation on March 20, 1986, and, on April 8, 1986, committed him to prison for two years, with a four-year special parole term.

After Petitioner completed his federal sentence in 1987, he was transferred to the INS Processing Center in El Paso, Texas. Petitioner's request for release pending completion of the exclusion proceedings was denied by the District Director on October 5, 1987. The Immigration Judge conducted hearings on October 9, 1987, and on October 29, 1987. Before the Immigration Judge, the Petitioner conceded excludability and applied for a waiver of exclusion pursuant to section 212(c) of the Immigration

3

and Nationality Act, 8 U.S.C. § 1182(c).  The Immigration Judge, acknowledging that the Petitioner met the statutory eligibility requirements of seven years' unrelinquished domicile and lawful permanent resident status, nevertheless determined that discretionary waiver under section 212(c) was not warranted in light of his prior drug-related activity.  The Immigration Judge noted that Petitioner's "favorable factors," in this case his American wife, his five American children, and his construction trade skills, did not weigh sufficiently in favor of granting a waiver.  Accordingly, on November 2, 1987, nearly ten years ago, the Immigration Judge ordered Petitioner excluded and deported to Mexico.

Petitioner filed a Notice of Appeal to the Board of Immigration Appeals on November 12, 1987.  In an opinion issued April 29, 1988, the Board affirmed the Immigration Judge's decision.  The Board, as had the Immigration Judge, noted the Petitioner's "unusual or outstanding equities," but concluded that, given the seriousness of Petitioner's drug trafficking conviction, he had failed to demonstrate rehabilitation.  In this regard, the Board found significant the Petitioner's involvement in 1985 in marihuana-related activity.[2]

_____

[2]    As the district court correctly observed, the Board did not treat the Petitioner's 1985 guilty plea as a "conviction," but rather as evidence that he had failed to rehabilitate himself.  The district court, citing *Martinez-Montoya v. INS*, 904 F.2d 1018 (5th Cir. 1990), cautioned that Petitioner's 1985 guilty plea pursuant to a deferred adjudication procedure utilized by the Texas state court was not a "'conviction' for the purposes of immigration law." This Court has indicated that a conviction by guilty plea pursuant to the Texas deferred adjudication procedure can carry consequences

In July 1989, approximately fourteen months after the Board had denied his appeal, Petitioner filed a Motion To Reopen and/or Motion for Reconsideration with the Board. The motion declared that, since his return to Frisco, Texas, in November 1987, Petitioner had become divorced from his American wife and had subsequently been awarded custody of his three oldest American children, Raymundo Jr., Francisco, and Albert. In July 1989, their ages were fifteen, fourteen, and nine, respectively.[3] Characterizing his family developments as "new material evidence," Petitioner also repeated his contentions that his extended residence in the United States, his ownership of a trailer, and his construction skills would render his exclusion and deportation an extreme hardship to his family.

On December 31, 1991, five years after Petitioner had been ordered excluded and deported, the Board issued a per curiam denial of Petitioner's motion to reopen. Citing *Matter of Cerna*, Int.

---

under immigration law only if the three-prong *Ozkok* standard is met. *See Wilson v. INS*, 43 F.3d 211, 215 (5th Cir.) (discussing application of *Matter of Ozkok*, Int. Dec. 3044 (B.I.A. Apr. 26, 1988), and noting that "*Ozkok*'s rule applying a federal 'conviction' standard rather than a state standard is reasonable and is consistent with congressional intent and the relevant case law"), *cert. denied*, 116 S.Ct. 59 (1995); *Martinez-Montoya* at 1024-26 (holding that conviction under Texas deferred adjudication procedure was not final because further adjudication was available and time for appeal had not expired). In any event, the Board used Petitioner's drug-related activity solely as evidence of a lack of rehabilitation, and neither party seeks to raise any issue in regard to the Board's use of Petitioner's 1985 guilty plea.

[3] The motion alleged that his two youngest children, Veronica and Juan, remained with Petitioner's ex-wife, who had remarried. At the time Petitioner filed his habeas action with the district court, Raymundo Jr. was over eighteen. By the time Petitioner filed this appeal in November 1995, only Albert was under eighteen.

Dec. 3161 (B.I.A. Oct. 7, 1991), the Board held that, as Petitioner's "lawful permanent resident status terminated with the entry of the final administrative order of exclusion and deportation, *i.e.*, when the Board dismissed the applicant's appeal," the Petitioner was statutorily ineligible for section 212(c) relief, which applies only to "[a]liens lawfully admitted for personal residence."

On June 30, 1992, Petitioner filed the instant petition for a writ of habeas corpus in the United States District Court for the Western District of Texas (El Paso Division) asserting that the Board's 1991 denial of his July 1989 motion to reopen was arbitrary and capricious. 8 U.S.C. § 1105a(b); 28 U.S.C. § 2241. Defendant-appellee District Director of the Immigration and Naturalization Service filed a Motion To Dismiss/Motion for Summary Judgment arguing that the Board's decision in *Cerna* was controlling. On August 18, 1995, the district court entered an order denying Petitioner's habeas petition. The district court, citing our decision in *Ghassan v. INS*, 972 F.2d 631 (5th Cir. 1992), *cert. denied*, 113 S.Ct. 1412 (1993), held that the Board's determination that Petitioner was no longer eligible for section 212(c) relief after the Board's April 1988 affirmance of the Immigration Judge's decision was not an abuse of discretion.

Petitioner brings this appeal, and we affirm.

## Discussion

"The exclusion of aliens is a fundamental act of sovereignty." *Gisbert v. United States Attorney General*, 988 F.2d 1437, 1440 (5th

6

Cir. 1993) (citing *Shaughnessy v. United States ex rel. Mazei*, 73 S.Ct. 625, 628 (1953) ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."); *United States ex rel. Knauff v. Shaughnessy*, 70 S.Ct. 309, 312 (1950)). The right to exclude aliens is vested in the political branches which "have plenary authority to establish and implement substantive and procedural rules governing the admission of aliens." *Id.*

The statutory scheme governing immigration affairs in the United States is the Immigration and Nationality Act (the Act). Under the Act, an order of deportation is reviewable directly by this Court pursuant to a petition for review, 8 U.S.C. § 1105a(a). The only review of an order of exclusion is pursuant to a petition for a writ of habeas corpus, 8 U.S.C. § 1105a(b). Included within the scope of habeas review of orders of exclusion, however, is the Board's compliance with prescribed procedures.

Throughout the Petitioner's exclusion proceedings and before the district court, he has conceded excludability. In his application to the district court for habeas relief and on appeal before this Court, Petitioner raised the sole issue of whether the Board's refusal to reopen or reconsider his exclusion case on the grounds that he was statutorily ineligible was based on an erroneous construction of section 212(c). There is no statutory provision for Petitioner's motion to reopen his exclusion proceeding; the authority for his motion derives entirely from the

7

regulations promulgated by the Attorney General. *INS v. Doherty*, 112 S.Ct. 719, 724 (1992); *INS v. Rios-Pineda*, 105 S.Ct. 2098, 2100 (1985); *Pritchett v. INS*, 993 F.2d 80, 83 (5th Cir.), *cert. denied*, 114 S.Ct. 345 (1993). The pertinent regulation, 8 C.F.R. § 3.2, permits the Board to reopen exclusion proceedings provided certain circumstances are met and subject to other stated restrictions. The three principal, independent grounds on which the Board might deny a motion to reopen are (1) statutory or "prima facie" ineligibility for section 212(c) relief, (2) "failure to introduce previously unavailable, material evidence," and (3) "a determination that even if these requirements were satisfied, the movant would not be entitled to the discretionary grant of relief which he sought." *Doherty*, 112 S.Ct. at 725. We have noted the "broad discretion" conferred to the Board over motions to reopen and have held consistently that the Board's denial is reviewed only for an abuse of discretion. *Pritchett*, 993 F.2d at 83. When the Board denies a motion to reopen on the basis of statutory ineligibility, as in this case, we exercise *de novo* review over all questions of law. *Ghassan*, 972 F.2d at 637. The Board's interpretation of the Act and implementing regulations, however, are entitled to great weight. *Carbajal-Gonzalez v. INS*, 78 F.3d 194, 197 (5th Cir. 1996) (citing *Chevron USA Inc. v. NRDC*, 104 S.Ct. 2778 (1984)); *Ka Fung Chan v. INS*, 634 F.2d 248, 252 (5th Cir. 1981).

## I.

Petitioner's principal argument in support of his habeas

application is a challenge to the legitimacy of our decision in *Ghassan*. According to Petitioner, *Ghassan*'s approval of the Board's position advanced in *Cerna* runs counter to a perceived congressional desire to alleviate hardship for those in Petitioner's position and therefore represents an erroneous construction of section 212(c).

*Ghassan* and *Cerna* both involved application of the Attorney General's discretionary relief authority conferred by section 212(c) of the Act.[4] In *Cerna*, the Board denied a deportable alien's motion to reopen on the grounds that, as he was subject to an administratively final order of deportation, he was unable to establish *prima facie* eligibility for such relief under section 212(c), which requires an applicant for relief to be a lawful permanent resident. *Matter of Cerna*, Int. Dec. 3161 (B.I.A. Oct.

---

[4] Section 212(c) of the Act, in pertinent part provided:

"Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to [the subsections setting forth classes of excludable aliens]." 8 U.S.C. § 1182(c).

Although facially applicable only to excludable aliens, this section has been extended by judicial and administrative decisions to apply to a person who has never left the United States if the ground of deportation would also be a ground of exclusion. *See Rodriguez v. INS*, 9 F.3d 408, 411-412 (5th Cir. 1993) ("Courts reviewing the decisions of the BIA have upheld the initial expansion of section 212(c) to grounds for deportation which have corresponding grounds for exclusion, and most courts have taken positions similar to that of the Attorney General and refused to extend section 212(c) relief to grounds of deportation which are not also grounds of exclusion."); *see also Ghassan*, 972 F.2d at 634 n.2 (discussing origins of the policy).

9

7, 1991); *see also Garcia-Hernandez v. INS*, 821 F.2d 222, 224 (5th Cir. 1987). Such a conclusion stems from the INS's position, approved by this Court, that a deportability decision becomes final at the time the Board renders its decision. *See Rivera v. INS*, 810 F.2d 540, 541-42 (5th Cir. 1987).

In *Ghassan*, this Court addressed whether a deportable alien whose original petition for section 212(c) relief was filed before a final decision of deportability could move to reopen the proceeding after the Board's decision. 972 F.2d at 637. Finding no reason to depart from the rationale of *Rivera*, we held:

> "In *Garcia-Hernandez* we concluded that the BIA was correct in holding that the petitioner was no longer eligible for section 212(c) relief because he was no longer a lawful resident and so could not obtain reopening. Under *Rivera* an alien's lawful status ends when the BIA rules him deportable. Thus, after the BIA decides that an alien is deportable, he is no longer a legal resident and thus is not eligible for section 212(c) relief, so his petition for reopening must be rejected. Accordingly, the BIA did not err in denying Ghassan's motion to reopen." *Ghassan*, 972 F.2d at 637-38 (footnote and citations omitted).

Although Petitioner correctly observes that the circuit courts are not entirely in agreement concerning the eligibility of an excludable alien subject to a final exclusion order to section 212(c) relief,[5] we have neither the inclination nor the ability to

---

[5] Together with this Court, the Third and Fourth Circuits have approved the Board's interpretation of section 212(c). *Katsis v. INS*, 997 F.2d 1067 (3d Cir. 1993), *cert. denied*, 114 S.Ct. 902 (1994); *Nwolise v. INS*, 4 F.3d 306, 310-12 (4th Cir. 1993), *cert. denied*, 114 S.Ct. 888 (1994). The First, Second, Seventh, Ninth and Eleventh Circuits have rejected this interpretation. *Gonclaves v. INS*, 6 F.3d 830 (1st Cir. 1993); *Vargas v. INS*, 938 F.2d 358 (2d Cir. 1991); *Henry v. INS*, 8 F.3d 426, 433-39 (7th Cir. 1993); *Butros v. INS*, 990 F.2d 1142 (9th Cir. 1993) (en banc); *Acosta-Montero v. INS*, 62 F.3d 1347 (11th Cir. 1995).

revisit the merits of our prior decision. *United States v. Zuniga-Salinas*, 952 F.2d 876, 877 (5th Cir. 1992) (en banc).

Had Petitioner's challenge to the legitimacy of *Ghassan* been his only argument, this would be an easy case indeed. The district court correctly dismissed his habeas petition, citing *Ghassan*, after correctly determining that Petitioner—whose denial of section 212(c) relief by the Immigration Judge had long ago been affirmed by the Board—was in a position clearly no better than the appellant in *Ghassan*. During the pendency of this appeal, however, the Attorney General amended the regulations governing section 212(c) relief in a manner favorable to Petitioner.[6] Accordingly, the

---

[6]    The pre-amendment regulation provided:

"The Board may on its own motion reopen or reconsider any case in which it has rendered a decision. Reopening or reconsideration of any case in which a decision has been made by the Board, whether requested by the Commissioner or any other duly authorized officer of the Service, or by the party affected by the decision, shall be only upon written motion to the Board. Motions to reopen in deportation proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing; nor shall any motion to reopen for the purpose of affording the alien an opportunity to apply for any form of discretionary relief be granted if it appears that the alien's right to apply for such relief was fully explained to him and an opportunity to apply therefor was afforded him at the former hearing unless the relief is sought on the basis of circumstances which have arisen subsequent to the hearing. A motion to reopen or a motion to reconsider shall not be made by or on behalf of a person who is the subject of a deportation proceedings subsequent to his departure from the United States. Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion. For the purpose of this section, any final decision made by the

11

parties were given an opportunity to submit briefs addressing the applicability of the new regulations as well as the applicability of the changes made by the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-32, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRAIRA), Pub. L. No. 104-208, Div. C, 110 Stat. 3009 (1996).

## II.

The current regulations permit the reopening of exclusion proceedings to entertain requests for section 212(c) relief even after the entry of a final exclusion order.[7]   Under the new

Commissioner prior to the effective date of the Act with respect to any case within the classes of cases enumerated in § 3.1(b)(1), (2), (3), (4), or (5) shall be regarded as a decision of the Board."   8 C.F.R. § 3.2 (1992).

On April 29, 1996, the Attorney General promulgated new regulations, effective July 1, 1996, that amended § 3.2.   Section 3.2(c)(1) currently provides, in pertinent part:

"Subject to the other requirements and restrictions of this section, and notwithstanding the provisions in § 1.1(p) of this chapter, a motion to reopen proceedings for consideration or further consideration of an application for relief under section 212(c) of the Act (8 U.S.C. 1182(c)) may be granted if the alien demonstrates that he or she was statutorily eligible for such relief prior to the entry of the administratively final order of deportation."   61 Fed. Reg. 18,900, 18,905 (1996) (to be codified at 8 C.F.R. § 3.2(c)(1)).

[7]     Supplementary comments by the Attorney General explain that the regulations were amended to ensure that "lawful permanent resident" would include an excludable alien who was eligible for section 212(c) relief prior to the Board's final decision:

"[I]f an alien accrues the seven years of lawful unrelinquished domicile necessary for eligibility for a

12

regulations, an excludable alien must file a motion to reopen within ninety days of the date of the final administrative decision or on or before September 30, 1996, whichever is later.[8]

In his two supplemental briefs, Petitioner argues that the new section 3.2(c) governs the denial of his motion to reopen because the regulations tacitly adopt the Second Circuit's interpretation of section 212(c) advanced in *Vargas v. INS*, 938 F.2d 358 (2d Cir. 1991), which was contrary to our decision in *Ghassan*. Although never addressing whether his status as a habeas petitioner—as opposed to an applicant to the Board requesting it to reopen its direct review of a denial of discretionary relief—affects his ability to benefit from the change in the regulations, Petitioner asserts that because he filed his motion to reopen seven years before the change in the regulations, and because his appeal of the district court's dismissal of his habeas action was pending on the date the regulations became effective, he was under no obligation

waiver under section 212(c) of the Act prior to the entry of an administratively final order of exclusion or deportation, he or she may file a motion to reopen for consideration or further consideration of such an application. An alien may not accrue time toward the seven years of lawful unrelinquished domicile required for section 212(c) purposes after the entry of a final administrative order of exclusion or deportation." 61 Fed. Reg. 18901.

[8] This restriction does not apply to (1) certain deportation orders entered in absentia, (2) applications for asylum based on changed circumstances in the country of nationality that could not have been discovered or presented at the former hearing, or (3) motions in which all parties agree that the restrictions should not apply. 61 Fed. Reg. 18905 (to be codified at 8 C.F.R. § 3.2(c)(3)).

13

to file a new motion to reopen.[9]

The District Director argues that the effective date of the new regulations precludes their retroactive application, that Petitioner's failure to file a subsequent motion to reopen after July 1, 1996, and before October 1, 1996, precludes relief under the current regulations, and that Petitioner's claim fails as he never sought the District Director's consent to file an out-of-time motion to reopen under the new regulations.

We agree with the District Director and, for the following reasons, hold that a habeas petitioner cannot take advantage of procedural changes in the regulations governing section 212(c) relief on a collateral habeas challenge to the order of exclusion when the Board's denial of a motion to reopen was proper under the standards applicable at the time it denied the motion.

To begin with, there is the simple fact that Petitioner has never sought relief under the amended regulation. The District Director, in his first supplemental brief filed on August 6, 1996, essentially invited Petitioner to file a new motion to reopen and conceded that any such motion would be reviewed under the new regulations.[10] Even after the expiration of the September 30, 1996,

[9]     Petitioner accurately summarized his argument in his first supplemental brief as follows: "Petitioner submits that the short answer to the Court's inquiry of what effect the April 29, 1996 amendment to 8 C.F.R. § 3.2(c) has on this appeal is that Petitioner wins."

[10]     The District Director's First Supplemental Brief stated: "The effect of this regulation appears to open the door to consideration of a motion to reopen from the Petitioner, unhindered by the precedent case law that formed the basis of the Board's original denial. In other words, if the Petitioner were to file a

14

deadline, Petitioner failed to seek the District Director's consent to file a motion to reopen pursuant to section 3.2(c)(3)(iii) of the amended regulation. Petitioner, for reasons unknown, chose instead to rely entirely on his *Ghassan*-as-bad-law argument and on the notion that the promulgation of new regulations governing Board procedure can serve to invalidate final decisions of the Board on habeas review. It is to that contention we now turn.

The regulations at issue do not operate retroactively to invalidate the Board's 1991 denial of Petitioner's motion to reopen; the regulations do not purport to apply retroactively, the Board's decision was, and had long been, "final" when the new regulations were promulgated, and the regulatory changes in procedure wrought by the new regulations are not of sufficient dimension to justify interference with a final decision by the Board under the guise of habeas review.

First, the regulations do not purport to apply retroactively. "Generally, courts will not apply regulations retroactively unless their language so requires." *Sierra Med. Ctr. v. Sullivan*, 902 F.2d 388, 392 (5th Cir. 1990). Although the traditional justification for judicial reluctance to apply regulations retroactively—interference with settled expectations and antecedent rights—are diminished when the change is beneficial to the claimant, "[n]evertheless, the general rule barring retroactivity still applies." *Id.; see also Carpenters Dist. Council v. Dillard*

---

motion to reopen or reconsideration of his motion to reopen, the Board would consider the request in light of the new regulation."

15

*Dep't Stores*, 15 F.3d 1275, 1291 (5th Cir. 1994) (stating that "administrative rules should not be construed as having retroactive effect unless their language requires that result"), *cert. denied*, 115 S.Ct. 933 (1995). The new regulations do not purport to apply retroactively; rather, they provide only that they become effective on July 1, 1996. An effective date provision "does not even arguably suggest that it has any application to conduct that occurred at an earlier date." *Landgraf v. USI Film Prods.*, 114 S.Ct. 1483, 1493 & n.10 (1994) (citing *Jensen v. Gulf Oil Ref. & Mktg. Co.*, 623 F.2d 406, 410 (5th Cir. 1980)). *But cf. id.* at 1523 (Scalia, J., concurring) (finding that an effective date provision "is presumed to mean 'shall have prospective effect upon enactment'"). As the language of the new regulation does not require its application to conduct (or completed proceedings) antedating its adoption, we refuse to impose its requirements to proceedings that have achieved finality. *See Landgraf*, 114 S.Ct. at 1505 ("When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would . . . impose new duties with respect to transactions already completed."); *see also Hughes Aircraft Co. v. United States*, 65 U.S.L.W. 4447 (U.S. June 16, 1997).

Second, the 1991 Board's denial of Petitioner's motion to reopen the Board's 1988 affirmance of the exclusion order was a final decision. Application of a subsequent change in a statute or regulation to a final decision implicates concerns not present when

16

the change occurs while the decision is pending before the initial tribunal or on direct appeal. "New legal principles, even when applied retroactively, do not apply to cases already closed." *Reynoldsville Casket v. Hyde*, 115 S.Ct. 1745, 1751 (1995). Although unquestionably the judiciary must generally apply changes in the law to cases pending on appeal, *Robertson v. Seattle Audubon Soc'y*, 112 S.Ct. 1407, 1414 (1992), and "[w]hen a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly," *Plaut v. Spendthrift Farm, Inc.*, 115 S.Ct. 1447, 1457 (1995) (citing *Landgraf*, 114 S.Ct. at 1500-08; *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801)), nevertheless "[h]aving achieved finality[,] . . . a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was," *id*. (emphasis in original). When a case achieves finality under a statutory scheme that precludes direct review by an Article III court,[11] the judicial interest in finality is also substantial. *See Rivera*, 810 F.2d at 541-42. Both the public and the Board have significant, cognizable interests in the finality of immigration proceedings. *See INS v. Abudu*, 108 S.Ct. 904, 913 (1988) ("There

---

[11]    Unlike the situation respecting deportation orders, direct judicial review of exclusion orders is not available. 8 U.S.C. § 1105a(b); *Delgado-Carrere v. INS*, 773 F.2d 629 (5th Cir. 1985).

17

is a strong public interest in bringing litigation to a close as promptly as is consistent with the interest in giving the adversaries a fair opportunity to develop and present their respective cases.  The relevance of this interest to deportation proceedings was pointedly explained in [*Jong Ha Wong*].");  *INS v. Jong Ha Wong*, 101 S.Ct. 1027, 1031 n.5 (1981) ("'Granting such motions [to reopen] too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case.  It will also waste the time of immigration judges called upon to preside at hearings automatically required by the prima facie allegations.'").  Indeed, "Congress' 'fundamental purpose' in enacting § 106 of the INA was 'to abbreviate the process of judicial review . . . in order to frustrate certain practices . . . whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts.'" *Stone v. INS*, 115 S.Ct. 1537, 1546 (1995) (quoting *Foti v. INS*, 84 S.Ct. 306, 311 (1963)).

These finality considerations have particular force in a case such as this for two reasons.  First, neither Petitioner's habeas action nor his July 1989 motion to reopen questions the legal validity, substantively or procedurally, of the Board's April 1988 decision affirming the Immigration Judge's November 1987 decision finding Petitioner excludable and denying section 212(c) relief on the basis that the factors favoring such discretionary relief were outweighed by those pointing in the contrary direction.

18

Petitioner's July 1989 motion asserts that changed circumstances arising after the April 1988 Board decision, principally his divorce from his wife and the award to him of custody of three of his minor children, sufficiently alter the mix of circumstances relevant to section 212(c) as to warrant the granting to him of discretionary relief thereunder. Petitioner's habeas action merely asserts that the Board's 1991 denial of his July 1989 motion to reopen was legally erroneous because it was based on the allegedly incorrect theory that, by virtue of the April 1988 decision, he was no longer eligible for section 212(c) relief under any circumstances as he was no longer an alien "lawfully admitted for personal residence." There is nothing even allegedly illegal or invalid about the April 1988 Board decision, and its finality should not be undermined by using April 1996 regulations to mount a habeas attack on the 1991 Board decision. In the second place, Petitioner, prior to the April 1996 regulations, had received Article III judicial review and determination and rejection of his challenge to the 1991 Board decision, in the form of the district court's August 1995 decision herein, a decision which was unquestionably correct when rendered. *Ghassan*. Failure to apply the April 1996 regulations does not deprive Petitioner of Article III review of the 1991 Board decision, to say nothing of the 1988 Board decision.[12]

---

[12]    Even were this case on direct appeal from the Board's 1991 decision to this Court, we would consider the change in the regulations to be the type of procedural change—discussed in both *Landgraf* and *Plaut*—that would not require the Board to revisit its 1991 denial of the Petitioner's 1989 motion to reopen. Procedural

19

Of course, the amended regulation at issue neither expressly directs this Court to apply its terms retroactively to motions to reopen denied prior to its effective date nor constitutes the type of procedural or jurisdictional change that this Court can *itself* apply at this stage of the proceedings.[13] Assuming the ability to

alterations to a process legitimately completed, as were the Board's 1988 and 1991 decisions, do not require a tribunal to set aside results and commence afresh under the new rules. *See Landgraf*, 114 S.Ct. at 1502 n.29 ("[T]he promulgation of a new rule of evidence would not require an appellate remand for a new trial. Our orders approving amendments to federal procedural rules reflect the common-sense notion that the applicability of such provisions ordinarily depends on the posture of the particular case."); *id.* at 1505 n.34 ("[T]he promulgation of a new jury trial rule would ordinarily not warrant retrial of cases that had previously been tried to a judge."); *Plaut*, 115 S.Ct. at 1458 ("Petitioners' principle would therefore lead to the conclusion that final judgments rendered on the basis of a stringent (or, alternatively, liberal) rule of pleading or proof may be set aside for retrial under a new liberal (or, alternatively, stringent) rule of pleading or proof. This alone provides massive scope for undoing final judgments and would substantially subvert the doctrine of separation of powers."); *see also Shipes v. Trinity Indus.*, 31 F.3d 347, 349 (5th Cir.) ("[T]he Court [in *Landgraf*] indicated that when a procedural matter has been properly decided under the old rule, and a new procedural rule is subsequently enacted while the ultimate resolution of the case is still pending, no reversal is required."), *cert. denied*, 114 S.Ct. 548 (1993). Further, as noted in the text, what Petitioner seeks is in substance a *second* exercise of discretion on his section 212(c) application, the first having been the Board's 1988 decision, which is not claimed to have been legally erroneous. But even if Petitioner had alleged that in its 1988 decision the Board abused its discretion in determining, upon a weighing of the relevant factors, that he did not then merit the favorable exercise of section 212(c) discretionary relief, such an allegation would not properly assert the denial of a *substantive right* for purposes of retroactivity analysis. *Mendez-Rosas v. INS*, 87 F.3d 672, 675 (5th Cir. 1996).

[13]    We readily accept the proposition, advanced in *Landgraf*, that an intervening rule authorizing prospective relief raises no retroactivity concerns when applied to cases pending on appeal. *See Landgraf*, 114 S.Ct. at 1501. Such has been the position of the District Director in this case; he conceded that the new regulation would apply both to motions to reopen filed after the effective date of the regulation and to those *pending before the Board* on

20

alter by regulation the judgment of a non-Article III administrative tribunal, *see Plaut*, 115 S.Ct. at 1459-60, the amended regulation at issue does not attempt to do so; it simply alters prospectively the procedure by which excluded aliens may file (or refile) motions to reopen.

Finally, we refuse to construe the narrow authority of the federal courts to recognize certain procedural changes on habeas review to extend to the circumstances here presented. We are not faced with the question, left open in *United States v. Andrade*, 83 F.3d 729, 730 n.1 (5th Cir. 1996), concerning the applicability of "decisions interpreting substantive criminal statutes" to habeas review. Nor are we faced with the situation addressed by the Supreme Court in *Teague v. Lane*, 109 S.Ct. 1060 (1989), concerning the application of decisions announcing "new constitutional rules of criminal procedure" to cases on habeas review. Rather, we deal only with a newly-adopted administrative regulation that, although evincing a different "interpretation" of statutory eligibility for section 212(c) relief than had been advanced previously, did not call into question the decisions under the regulations as previously worded. As discussed above, "'congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result.'" *Landgraf*, 114 S.Ct. at 1496 (quoting *Bowen v. Georgetown Hosp. Ass'n*, 109 S.Ct.

---

that date. Petitioner is in neither situation; his motion had already been denied years before the time the regulation became effective and he refused the District Director's invitation to file a new motion under the new regulation.

21

468, 471 (1988)); *see also Hughes Aircraft Co.* Section 3.2(c) represents a change in the law governing the procedure the Attorney General must follow when determining the eligibility for discretionary relief under section 212(c). A change in the law, whether statutory or administrative, cannot form the basis for habeas relief. *Cf. Dunn v. Maggio*, 712 F.2d 998, 1001 (5th Cir. 1983), *cert. denied*, 104 S.Ct. 1297 (1984); *Rubio v. Estelle*, 689 F.2d 533, 536 (5th Cir. 1982). The amended regulation does not illuminate the initial threshold inquiry in this habeas review of Petitioner's exclusion proceeding: whether the procedures prescribed for determining the propriety of a motion to reopen were followed by the Board.

The district court concluded that the Board properly denied the 1989 motion to reopen on the grounds that Petitioner, because he was subject to a final order of exclusion when (and ever after) he filed the motion, was hence statutorily ineligible for the section 212(c) relief his motion to reopen sought to bring about. The Board's decision (and that of the district court as well) was in keeping with both published INS policy and with our Circuit's precedent. Although after the district court decision the INS adopted regulations that reflect a somewhat more favorable policy for those in a position similar to Petitioner's,[14] Petitioner does

---

[14] The new regulation did not, however, alter the requirement that a statutorily eligible alien must also present previously unavailable material evidence. 61 Fed. Reg. 18,900, 18,905 (1996) (to be codified at 8 C.F.R. § 3.2(c)(1)). The Board addressed only the issue of the Petitioner's statutory eligibility in its denial of his motion to reopen. Statutory eligibility and the availability/materiality of the evidence proffered are preliminary

22

not contend that the Board's denial failed to adhere to then-existing procedures for motions to reopen. Nor does Petitioner argue that the Board failed to follow the current section 3.2(c); Petitioner concedes that he has never filed a motion to reopen after the effective date of the new regulation. The Petitioner has failed to identify any procedural infirmity that might satisfy a minimum threshold requirement for the grant of habeas relief.

### III.

Although ultimately grounding our affirmance of the district court's denial of Petitioner's application for habeas relief on the inapplicability of amended section 3.2, we further note that the passage last April of the AEDPA may have eliminated the substantive relief sought by Petitioner. Section 440(d) of the AEDPA amended section 212(c) of the Act to prohibit the Attorney General from extending discretionary relief to aliens who, like Petitioner, have been convicted of crimes involving controlled substances.[15] Petitioner argues that, as section 440(d) of the AEDPA speaks only to those aliens who are "deportable," it is inapplicable to

---

prerequisites; even if these are both met, the Board would retain discretion to deny section 212(c) relief on the merits. *Abudu*, 108 S.Ct. at 912.

[15]    8 U.S.C. § 1182(c), as amended by AEDPA § 440(d), provides:

"This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title."

23

excludable aliens; and, in a recent *en banc* opinion, the Board agreed with Petitioner's interpretation of section 440(d) in this respect. *Matter of Fuentes-Campos*, Int. Dec. No. 3319 (BIA May 14, 1997). Respondent District Director contends that section 440(d)'s restriction applies to both exclusion and deportation proceedings because section 212(c) addresses waivers of inadmissability. Although Petitioner does not address the issue of whether section 440(d) should apply to cases pending as of its effective date, Respondent argues that, as section 212(c) relief operates "prospectively," no retroactivity concerns are implicated and the AEDPA would eliminate the relief sought by Petitioner should the motion to reopen be granted.

We have previously held that section 440(a) of the AEDPA operated to divest the federal courts of jurisdiction to review, on appeal from the Board, final orders of deportation pending on the date of enactment.[16] *Mendez-Rosas v. INS*, 87 F.3d 672, 675 (5th

---

[16] The parties agree that AEDPA section 440(a) does not divest this Court of jurisdiction as it applies exclusively to review of "final order[s] of deportation." AEDPA section 440(a), unlike AEDPA section 440(d), amends section 106(a)(10) of the Act, a section governing habeas review of deportation orders. We need not, and do not, decide what effect, if any, section 440(a) has on our ability to review final orders of exclusion pursuant to our habeas jurisdiction because we have determined that Petitioner is in any event not entitled to any relief. Regardless of how the jurisdictional issue is resolved, the result would be the same: the district court is affirmed. In such circumstances, we have refrained from reaching the jurisdictional question. *See Texas Employers' Ins. Ass'n v. Jackson*, 862 F.2d 491, 496 n.8 (5th Cir. 1988) (*en banc*) ("While such pretermitting of a jurisdictional issue is rare, there is respected precedent for it in analogous circumstances.") (citing *Norton v. Matthews*, 96 S.Ct. 2771, 2775 (1976); *Secretary of Navy v. Avrech*, 94 S.Ct. 3039, 3040 (1974); *United States v. Augenblick*, 89 S.Ct. 528, 531 (1969)), *cert. denied*, 109 S.Ct. 1932 (1989); *see also In re DN Assocs.*, 3 F.3d

Cir. 1996), *cert. denied*, 117 S.Ct. 694 (1997); *Williams v. INS,* 114 F.3d 82, 83-84 (5th Cir. 1997); *see also Fernandez v. INS*, 113 F.3d 1151 (10th Cir. 1997); *Boston-Bollers v. INS*, 106 F.3d 352 (11th Cir. 1997); *Kolster v. INS*, 101 F.3d 785 (1st Cir. 1996); *Salazar-Havo v. INS*, 95 F.3d 309 (3d Cir. 1996); *Hincapie-Nieto v. INS*, 92 F.3d 27 (2d Cir. 1996); *Qasguargis v. INS*, 91 F.3d 788 (6th Cir. 1996), *cert. denied*, 65 U.S.L.W. 3585 (U.S. Feb. 24, 1997) (No. 96-806); *Duldulao v. INS*, 90 F.3d 396 (9th Cir. 1996), *cert. denied*, 117 S.Ct. 694 (1997). *But see Reyes-Hernandez v. INS*, 89 F.3d 490 (7th Cir. 1996) (section 440(a) inapplicable to alien who, prior to its enactment, conceded deportability despite having at least colorable defense thereto, and sought section 212(c) waiver). To date, no federal court of appeals has addressed whether section 440(d)'s elimination of section 212(c) relief for aliens convicted of certain drug offenses applies to aliens who filed applications for waiver prior to the enactment of the AEDPA. Recently, however, the Attorney General issued a decision holding that it does. *Matter of Soriano*, Int. Dec. 3289 (B.I.A., Att'y Gen. Feb. 21, 1997).[17]

_____

512, 515 (1st Cir. 1993) (same); *FDIC v. Scarsella Bros., Inc.*, 931 F.2d 599, 602 (9th Cir. 1991) (same).

[17] In *Soriano*, the Attorney General considered whether AEDPA section 440(d) applied to applications for relief under section 212(c) pending when the AEDPA was enacted. Concluding that application would raise no retroactivity concerns, the Attorney General stated:

"[T]he application of AEDPA § 440(d) to pending applications for section 212(c) relief does not impair a right, increase a liability, or impose new duties on criminal aliens. The consequences of Respondent's

The Supreme Court, in *Lindh v. Murphy*, 65 U.S.L.W. 4557 (U.S. June 23, 1997) (No. 96-6298), held that the provision in AEDPA section 107(c), which created chapter 154 of Title 28 (setting forth special habeas corpus procedures for capital cases applicable upon a state's attainment of certain conditions) and called for its application to "cases pending on or after the date of enactment of this Act," favored an *expressio unius est exclusio alterius* construction of the AEDPA such that, by negative implication, certain amendments to chapter 153 (which were silent in this regard) would not apply to pending habeas cases. *Id*. Section 440(d), located in Title IV of the AEDPA (an entirely different title denominated "Terrorist and Criminal Alien Removal and Exclusion"), contains no language addressing application to cases seeking section 212(c) relief pending on the date of the AEDPA's enactment or, for that matter, habeas petitions seeking review of a Board decision not to reopen a final decision denying such relief pending on the same date. In this regard, section 440(d) is

---

conduct remain the same before and after the passage of AEDPA: criminal sanctions and deportation. AEDPA § 440(d) is best understood as Congress's withdrawal of the Attorney General's authority to grant prospective relief. Thus the statute alters both jurisdiction and the availability of future relief, and should be applied to pending applications for relief." *Id.* at 4-5 (discussing *Landgraf*, 114 S.Ct. 1483).

In response to concerns raised that aliens may have conceded deportability in reliance on the availability of section 212(c) discretionary relief, the Attorney General directed the Board to reopen cases upon petition for the limited purpose of contesting deportability. *Id.* at 8. This narrow class would not appear to include Petitioner, as in his case denial of section 212(c) relief became final long prior to the AEDPA.

similar to section 440(a), which we have held (prior to *Lindh*) to apply to pending deportation cases. *Mendez-Rosas*, 87 F.3d at 675.

We have no occasion to pass on the merits of the Attorney General's *Soriano* opinion or on the effect thereon (or on application of AEDPA sections 440(d) or 440(a)) of the Supreme Court's opinion in *Lindh*,[18] as we have determined that Petitioner is in any event entitled to no relief (see note 16, *supra*). For the same reason, we do not pass on the correctness of the Board's recent opinion in *Matter of Fuentes-Campos* that AEDPA section 440(d)'s withdrawal of section 212(c) relief from those deportable due to drug-related convictions does not apply to those who are *excludable* for the same reasons.[19]

---

[18]   In *Yesil v. Reno*, 1997 WL 394945 No. 96-CIV-8409 (S.D.N.Y. July 15, 1997), the court found *Lindh*'s analysis of Title I of the AEDPA applicable to the immigration provisions of Title IV of the AEDPA. Accordingly, the court held that AEDPA section 440(d) did not apply to applications for section 212(c) relief pending on the effective date of the AEDPA. A similar conclusion was reached in *Mojica v. Reno*, Nos. 97-CV-1085-JBW, 1997 WL 357808 (E.D.N.Y. June 24, 1997).

[19]   On September 30, 1996, the IIRAIRA was signed by the President. The IIRAIRA repeals section 106 of the Act and replaces it with a new section, to be codified at 8 U.S.C. § 1252, prohibiting judicial review of any final order of removal against an alien who is removable by reason of having committed certain drug-related offenses, whether pursuant to an exclusion or deportation proceeding, Pub. L. No. 104-208, Div. C, Title III, § 306(a) & (b), 110 Stat. 3009 (1996). The new section 1252, however, applies only to "motions to reopen filed on or after the date of enactment." *Id*. § 306(c). Petitioner and the District Director agree that IIRAIRA section 306(b) does not apply to this case. They are correct.
We note that IIRAIRA section 304(b) repeals section 212(c). Pursuant to IIRAIRA section 309(a), that provision did not become effective until 180 days after September 30, 1996. Further, IIRAIRA section 309(c) provides for certain transitional rules. Petitioner and the District Director both take the position that the IIRAIRA has no effect on this appeal. As we hold that

27

## Conclusion

We affirm the district court's denial of Petitioner's application for a writ of habeas corpus.

AFFIRMED

---

Petitioner is otherwise in no event entitled to any relief, we do not address whether any provision of the IIRAIRA is applicable to preclude relief to Petitioner or render his claims essentially moot (see note 16, *supra*).