Jose CEDILLO–GONZALEZ

v.

Luis GARCIA, District Director,
Immigration and Naturalization
Service.

No. EP–98–CA–465–DB.

United States District Court,
W.D. Texas,
El Paso Division.

June 11, 1999.

Linda Y. Chew, El Paso, TX, for petitioner.

James W. Blagg, United States Attorney, David W. Ogden, Acting Attorney General, Civil Division, Richard M. Evans, Assistant Director, Office of Immigration Litigation, Jose J. Tavarez, Special Assistant United States Attorney, Marion E. Guyton, Trial Attorney, Office of Immigration Litigation, Civil Division, for respondent.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Jose Cedillo–Gonzalez's ("Petitioner") Motion to

Alter or Amend Judgment Pursuant to Rule 59(e), filed on March 16, 1999, in the above-captioned cause. The Immigration and Naturalization Service ("INS") filed its Opposition to Petitioner's Motion on April 9, 1999. After due consideration, the Court is of the opinion that the Motion should be granted for the reasons that follow.

### Factual and Procedural Background[1]

Petitioner entered the United States from Mexico on July 2, 1981, as an immigrant, and later was admitted as a lawful permanent resident. On October 25, 1989, Petitioner was convicted in the 244th Judicial District Court of Ector County, Texas, for possession of cocaine, sentenced to six years probation and fined $300 plus court costs. As a result, the INS initiated deportation proceedings against him on December 11, 1995, by issuing an Order to Show Cause which charged him as deportable for having been convicted of a controlled substance offense, under the Immigration and Nationality Act of 1952 ("INA") § 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i).

The first hearing on the Order to Show Cause was held before an immigration judge on January 22, 1996. On April 8, 1996, Petitioner admitted the allegations contained in the Order to Show Cause and conceded deportability. Petitioner then filed an application for a waiver of deportability pursuant to INA § 212(c) ("§ 212(c)") on June 14, 1996. A hearing on the merits of the application was set for September 6, 1996.

After the Order to Show Cause issued, but before the September 6 hearing, the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) ("AEDPA") was enacted. Prior to the AEDPA's enactment, § 212(c) provided for discretionary relief from deportation for long-time lawful permanent residents of the United States. Section 440(d) of AEDPA ("§ 440(d)"), however, eliminated the availability of the § 212(c) discretionary waiver to persons such as Petitioner who are convicted of certain felony offenses.

At the September 6 hearing, an immigration judge found Petitioner deportable as charged and ineligible to apply for a § 212(c) waiver, relying on § 440(d). Petitioner appealed this finding to the Board of Immigration Appeals ("BIA"). On August 19, 1997, the BIA dismissed Petitioner's appeal, citing § 440(d) and *Matter of Soriano*, Int.Dec. No. 3289, 1996 WL 426888 (A.G. Feb. 21, 1997).[2] The BIA noted that Petitioner was ineligible for a § 212(c) waiver because he was deportable under INA § 241(a)(2)(B). The decision also provided written notice that Petitioner could move to reopen his case for the limited purpose of contesting deportability.

On August 27, 1997, Petitioner made a written request to the BIA to reopen his deportation proceedings on the basis that he had conceded deportability prior to April 24, 1996, in reliance on the availability of § 212(c) relief. On October 27, 1997, the BIA reopened Petitioner's contest of deportability in accordance with *Matter of Soriano;* however, the BIA found Petitioner deportable as charged and dismissed Petitioner's appeal for a second time.

Petitioner filed the instant Petition for a writ of habeas corpus under 28 U.S.C. § 2255 on November 13, 1998. He argued that § 440(d) did not apply retroactively to his § 212(c) application for a waiver of deportability, and that even if it did apply, it would result in a violation of his right to equal protection and of his guarantee to due process under the United States Constitution.

The INS, however, contested the Court's jurisdiction to even entertain the petition

---

1. The facts in this case are outlined in greater detail in the underlying Memorandum Opinion and Order entered on March 2, 1999.

2. In *Matter of Soriano,* the Attorney General concluded that the AEDPA applied retroactively to pending cases.

under the AEDPA. The INS further argued that even if the Court had jurisdiction to review the petition, it should dismiss it because Petitioner did not show a constitutional error resulting in a fundamental miscarriage of justice. Finally, the INS asserted that Petitioner's statutory and constitutional claims had no merit.

By Memorandum Opinion and Order entered on March 2, 1999, ("underlying Memorandum Opinion") the Court denied the Petition and entered final judgment in this cause. In the underlying Memorandum Opinion, the Court first found that it had jurisdiction to reach the statutory and constitutional merits of the Petition. The Court then addressed the merits of the Petition, ruling that § 440(d) did apply retroactively to Petitioner because his § 212(c) application post-dated the effective date of the AEDPA. As to Petitioner's equal protection claim, the Court, relying on *LaGuerre v. Reno*, 164 F.3d 1035 (7th Cir.1998), concluded that Congress had a rational basis for distinguishing between excludable and deportable aliens and, consequently, held Petitioner's equal protection claim was without merit.

In the instant Motion to Alter or Amend Judgment, Petitioner challenges the Court's ruling that § 440(d) applies retroactively to bar him from applying for a § 212(c) waiver. Petitioner contends the Court erred in its retroactivity analysis under *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) and *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1522, 128 L.Ed.2d 229 (1994). Furthermore, Petitioner avers the Court did not address the second of two equal protection constitutional challenges raised in his Petition.

## DISCUSSION

Because the instant Motion does not contest the Court's ruling that it has juris-

diction over this matter and that the scope of review encompasses at least Petitioner's constitutional and statutory claims,[3] the Court does not revisit these jurisdictional issues. Also, the Court reviews only the statutory provision directly at issue here, namely, § 440(d).

In the underlying Memorandum Opinion, the Court ruled that § 440(d) did apply retroactively to Petitioner because he did not file his § 212(c) application until *after* the effective date of § 440(d) and in spite of the fact that his deportation proceedings were pending *before* the enactment of the AEDPA. The Court reasoned that the facts at hand did not fall within the four corners of *Sandoval v. INS*, where the Third Circuit concluded "that Congress did indeed express an intent that AEDPA's amendment to INA § 212(c) should not apply to cases pending on the date of enactment...." 166 F.3d 225, 242 (1999); *accord Henderson v. INS*, 157 F.3d 106, 129–30 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Goncalves v. Reno*, 144 F.3d 110, 133 (1st Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).

The Court begins with a discussion of Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"). It then addresses the retroactivity of § 440(d), finding that it does not apply retroactively to bar Petitioner from applying for a § 212(c) waiver. The Court does not reach Petitioner's pending equal protection claim.

### Rule 59(e)

Petitioner brings the instant Motion pursuant to Rule 59(e). "Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before

---

**3.** In its Response, the INS does not concede the Court's ruling that it has jurisdiction over this matter. At the same time, however, the INS does not contest the Court's jurisdiction for purposes of the instant Motion.

the judgment issued. Moreover, they cannot be used to argue a case under a new legal theory." *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir. 1986) (internal citations omitted), *accord Simon v. United States,* 891 F.2d 1154, 1159 (5th Cir.1990). Here, Petitioner contends the Court made a manifest error of law in the underlying Memorandum Opinion. The Court agrees.

### Retroactivity of AEDPA § 440(d)

█ The general rule is legislation is presumed not to be retroactive. *See, e.g., Landgraf,* 511 U.S. at 268–71, 114 S.Ct. at 1498–500. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.* at 265, 114 S.Ct. at 1497. However, under some circumstances a court should apply the law that is in effect at the time it makes its decision. *See id.* at 273, 114 S.Ct. at 1501. For instance, if a statute enacted after the underlying event allows such application, or has an affect on the available relief that is only prospective in nature, applying the new statute to the action does not constitute an impermissible retroactive application. *See id.,* 114 S.Ct. at 1501.

The analysis for determining whether a change in law should apply retroactively is straightforward. First, a court must look to the express language of the statute to determine whether there is congressional intent for the law to apply retroactively. *See id.* at 280, 114 S.Ct. at 1505; *see also Sandoval,* 166 F.3d at 240; *Williams v. Cain,* 117 F.3d 863, 864 (5th Cir.1997). If Congress' intent is not discernable from the express language of the statute, a court must employ traditional rules of statutory construction to determine such intent. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505; *see also Sandoval,* 166 F.3d at 240; *Williams,* 117 F.3d at 864. If the intent is clear that the new statute should not apply retroactively, then a court must construe the law in accordance with such intent. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505; *see also Sandoval,* 166 F.3d at 240.

█ If traditional rules of statutory construction suggest that a new law applies to a pending case, a court then must determine whether application of the law would have an impermissible retroactive effect. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505; *see also Sandoval,* 166 F.3d at 240; *Williams,* 117 F.3d at 864–65. A statute is retroactive if it "takes away or impairs vested rights under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability to past transactions." *Landgraf,* 511 U.S. at 269, 114 S.Ct. at 1499 (original citation and quotation omitted). If a new statute does not have a disfavored retroactive effect, "a court should apply the law in effect when its decision is rendered, even though the applicable statute was enacted after the event that gave rise to the suit." *Williams,* 117 F.3d at 865.

Here, § 440(d) expanded the category of criminal convictions that would render an alien ineligible to apply for a § 212(c) waiver. Thus, aliens like Petitioner, convicted of an aggravated felony under INA § 241(a)(2)(A)(iii) (now codified at 8 U.S.C. §§ 1227(a)(2)(A)(iii)), may be ineligible for § 212(c) relief if § 440(d) is applicable to them. The AEDPA, however, does not indicate whether § 440(d) is to be applied retroactively to pending cases or only prospectively. *See LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir.1998) (rehearing and suggestion for rehearing en banc denied (Apr. 9, 1999)); *Goncalves,* 144 F.3d at 128. Although the Fifth Circuit has not provided direct guidance on this issue, it has indicated in dictum that § 440(d) is similar to § 440(a) and that it previously has held that § 440(a) applied to pending deportation cases. *See Hernandez–Rodriguez v. Pasquarell,* 118 F.3d 1034, 1045–46 (5th Cir.1997) (referring to *Mendez–Rosas v. INS,* 87 F.3d 672, 675 (5th Cir.1996) and *Williams,* 114 F.3d at 83–84). Neverthe-

less, because the Court does not read *Hernandez–Rodriguez* as controlling on the issue of § 440(d)'s retroactivity, it considers this issue unresolved in this circuit.[4]

As the retroactivity analysis described earlier suggests, and as petitioner urges, a court's inquiry should go to the functional implications of the subject new law and not so much to the gratuitous misfortunes of administrative scheduling. *See Mathews v. Reno,* 52 F.Supp.2d 195, 203 (D.Mass. 1999) (stating, "it would be unfair to hold that [petitioner] who was in deportation proceedings in 1994, is ineligible for a waiver of deportation simply because his first substantive hearing before an [immigration judge]—his first real opportunity to apply for [§ 212(c) ] relief—was scheduled after the enactment of the AEDPA."). After all, as the BIA noted in *Matter of Soriano,* "eligible legal residents requiring a [§ 212(c)] waiver have no control over when proceedings are commenced or how quickly and in what order hearings and appeals are set or adjudicated." Int.Dec. No. 3289, 1996 WL 426888. Thus, the Court is of the opinion that it should have subjected § 440(d) to the retroactivity analysis, because Petitioner's deportation proceedings were pending when the AEDPA came into effect, rather than simply rely on the date Petitioner actually filed his application for a § 212(c) waiver.

A number of courts already have addressed the issue of § 440(d)'s retroactivity where an alien's deportation action was pending at the time Congress enacted the law. Some courts have held that § 440(d) should not be applied retroactively. *See Mayers v. INS,* 175 F.3d 1289, 1302–03 (11th Cir.1999); *Sandoval,* 166 F.3d at 241; *Goncalves,* 144 F.3d at 126–33; *Henderson,* 157 F.3d at 129. The ratio-

nale for these decisions is that retroactive application of § 440(d) would contravene rules of statutory construction and the legislative history of § 440(d). *But see LaGuerre,* 164 F.3d at 1041 (holding that § 440(d) should apply retroactively, because the section does not impair any rights the deportable alien had when he committed the crime for which § 440(d) rendered him ineligible to apply for § 212(c) discretionary relief and that § 440(d) only limits the discretionary relief available).

In *Sandoval,* for example, the Third Circuit was faced with "whether AEDPA § 440(d), a statutory change that occurred while Sandoval's case was pending and that makes aliens who have been found guilty of drug offenses ineligible for discretionary relief under § 212(c) . . . applies to Sandoval." *See* 166 F.3d at 227. After applying statutory rules of construction delineated in *Landgraf* and expanded upon in *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the court held that the "AEDPA does contain an expression of congressional intent and that Congress's intent was that the AEDPA amendment to § 212(c) was not to be applied to pending cases." *Id.* at 240; *accord Mayers,* 175 F.3d 1289, 1302–03; *Goncalves,* 144 F.3d at 133. The court also noted that other sections of the AEDPA expressly apply to cases pending on the AEDPA's effective date. *See id.* at 241. Furthermore, the court examined the legislative history of the § 212(c) revision and observed that the provision in the Senate version of the bill making the law retroactive was deleted in the final version. *See id.* Thus, the court concluded that, "according to the *Lindh* Court's explication of *Landgraf,* we can discern by nega-

---

**4.** In *Matter of Soriano,* the United States Attorney General opined that § 440(d) was to be applied retroactively to petitioners whose deportation proceedings were commenced before the AEDPA became effective. *See* Int. Dec. No. 3289, 1996 WL 426888. The opinion of the Attorney General, however, does not control the Court because "[t]he judiciary

is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984); *see also Goncalves,* 144 F.3d at 127.

tive implication that AEDPA § 440(d) was not intended to apply to cases pending on the date of enactment." *Id.,accord Homayun v. Cravener,* 1999 WL 159853, *14 (S.D.Tex. Mar.19, 1999).

The First Circuit also recently addressed the issue of whether Congress intended for § 440(d)'s restrictions on § 212(c) relief to apply retroactively under analogous facts. *See Goncalves,* 144 F.3d at 126. After a thorough analysis of the question under *Landgraf* and *Hughes,* the First Circuit similarly found that Congress did not intend its new provisions restricting such discretionary relief to apply retroactively and thus concluded that § 440(d) did not apply retroactively. *Id.* at 133.

■ All told, the Court concurs with the conclusions of the First and Third Circuit that § 440(d) does not apply retroactively, because it finds their reasoning thorough and sound. Even assuming, *arguendo,* that normal statutory construction suggested § 440(d) should apply retroactively or that the statute is completely silent on the matter, the Court still would find that § 440(d) would have an impermissible retroactive effect. *See Goncalves,* 144 F.3d at 128. Indeed, "[p]rior to the passage of AEDPA, [Petitioner] had a statutory right to apply for a § 212(c) waiver. To prohibit [him] from making such an application now 'attaches a new disability' and imposes additional burdens on past conduct." *Mayers,* 175 F.3d 1289, 1303 (citing *Hughes Aircraft,* 520 U.S. at 948, 117 S.Ct. at 1877). Consequently, the Court is of the opinion that it should grant the instant Motion and allow Petitioner the opportunity to apply for a discretionary waiver under § 212(c).

### Equal Protection Claim

Having found that § 440(d) does not apply retroactively to prevent Petitioner from applying for a § 212 waiver, the Court does not reach his equal protection challenge. *See Sandoval,* 166 F.3d at 242. Thus, the Court finds that that portion of

the underlying Memorandum Opinion addressing this issue should be vacated.

Accordingly, **IT IS HEREBY ORDERED** that Petitioner's Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Memorandum Opinion and Order entered on March 2, 1999, in the above-captioned cause is **AMENDED and VACATED** as provided in the instant Memorandum Order and Opinion.

**IT IS FURTHER ORDERED** that Petitioner's writ of habeas corpus is **GRANTED** to the extent that Petitioner is allowed to apply for relief from deportation under INA § 212(c) as it existed prior to the enactment of the AEDPA.