**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 95-60472**

---

**ROGELIO MENDEZ-ROSAS,**

**Petitioner,**

**VERSUS**

**IMMIGRATION AND NATURALIZATION SERVICE,**

**Respondent.**

---

Petition for Review of an Order of
the Board of Immigration Appeals

---

June 26, 1996

Before REAVLEY, GARWOOD, and DeMOSS, Circuit Judges.

PER CURIAM:

In January of 1994, deportation proceedings were commenced against Petitioner Rogelio Mendez-Rosas, charging that he is subject to deportation because of his conviction for attempted capital murder.[1]   On October 27, 1994, Petitioner appeared before an immigration judge, conceded deportability, and applied for discretionary relief via a waiver of deportation pursuant to § 212(c) of the Immigration and Nationality Act, 8 U.S.C. § 1182(c).

---

[1]On September 19, 1990, Petitioner pled guilty in Texas state court to attempted capital murder with a deadly weapon.  He was sentenced to a 25 year term of imprisonment and is currently incarcerated with the Texas Department of Criminal Justice.

After a hearing on the merits, the immigration judge granted Petitioner's request for relief. On appeal, the Board of Immigration Appeals ("BIA") vacated the immigration judge's grant of relief and Petitioner now appeals to our Court.

Finding that § 440(a) of the newly enacted "Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)" retroactively eliminates judicial review of the final deportation order in this case against Petitioner who admitted he is deportable by reason of his commission of an aggravated felony, we dismiss Petitioner's appeal for lack of jurisdiction.


## DISCUSSION

The AEDPA (Pub.L. 104-132, 110 Stat. 1214) was signed into law by the President on April 24, 1996. The Act is divided into several Titles, each addressing various issues ranging in subject matter from habeas corpus reform (Title I) to nuclear weapons restrictions (Title V). Here, we are concerned with Title IV, "Terrorist and Criminal Alien Removal and Exclusion," specifically, sub-section 440(a).

At issue is whether § 440(a) should be applied retroactively to appeals which were pending before our Court when the bill became law. By its express language, § 440(a) eliminates judicial review of any final deportation order against an alien who is deportable by reason of having committed any one of a number of certain enumerated offenses. The INS argues that because § 440(a) contains no express effective date, the statute became effective when the

2

Act was signed by the President. Accordingly, the INS argues that § 440(a) became effective on April 24, 1996, and should be applied retroactively to Petitioner's case. On the other hand, the Petitioner argues that because § 440(a) contains no effective date, it is presumed to apply prospectively, and does not apply to Petitioner's pending appeal. For the following reasons, we agree with the INS and hold that § 440(a) applies retroactively to Petitioner's case.

### *Retroactivity Test*

In **Landgraf v. USI Film Products**, 114 S. Ct. 1483 (1994), the Supreme Court clarified the analysis through which courts are to determine whether retroactive application of a law is appropriate. First, we must determine whether Congress has clearly expressed an intent that the statute be applied retroactively. **Landgraf**, 114 S. Ct. at 1505. ("[A] requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." **Id**. at 1498.) If Congress has clearly expressed an intention that a statute be applied retroactively, then the statute should be construed in accordance with that intent. **Id**. at 1505. If there is no clear congressional expression of retroactivity, then we must look to the nature of the statute presented.

If the statute affects the substantive rights of the parties, we presume that the statute is not to be applied retroactively.[2] However, if the statute addresses jurisdictional rules, we presume that it is to be applied retroactively.[3] **Landgraf**, 114 S. Ct. at 1501-02. This jurisdictional exception to the presumption against retroactivity is appropriate because "[a]pplication of a new jurisdictional rule usually takes away no substantive rights but simply changes the tribunal that is to hear the case." **Id**. at 1502 (internal citations omitted); "[J]urisdictional statutes `speak to the power of the court rather than to the rights or obligations of the parties.'" **Id**. (citing, **Republic National Bank of Miami**, 113 S. Ct. at 565, Thomas, J., concurring). Rebuttal of this presumption

---

[2]"Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.... The presumption against statutory retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact." **Landgraf**, 114 S. Ct. at 1499-1500.

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the principal that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.

**Id**. at 1497(internal citations omitted).

[3]We also presume retroactive application when a statute involves changes in procedural rules. Noting "diminished reliance interests," the Supreme Court in **Landgraf** states that, "[b]ecause rules of procedure regulate a secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." **Landgraf**, 114 S. Ct. at 1502.

requires some indication that the jurisdictional rule curtailed a substantive right, such as an impairment of rights which a party possessed when he acted, an increase in a party's liability for past conduct, or an imposition of new duties with respect to transactions already completed. **United States v. Hughes Aircraft Co.**, 63 F.3d 1512, 1517 (9th Cir. 1995) (<u>citing</u>, **Landgraf**, 114 S. Ct. at 1505).

*Analysis*

We first must determine whether the AEDPA evinces a clear congressional intent that § 440(a) applies retroactively to appeals which were pending in our Court when the AEDPA was signed into law. As usual, we start with the language of the statute, itself. **Kellogg v. United States**, (In re West Texas Marketing Corp.), 54 F.3d 1194, 1200 (5th Cir.), <u>cert. denied</u>, ___ U.S. ____, 116 S. Ct. 523, 133 L.Ed.2d 430 (1995).

Prior to enactment of the AEDPA, our Court's jurisdiction to review final orders of alien deportation arose under § 106 of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C. § 1105(a). Section 106 provided, in relevant part:

> The procedure prescribed by, and all the provisions of Chapter 158 of Title 28 shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or pursuant to section 1252a of this title or comparable provisions of any prior Act, except that -

\*\*\*\*

5

> (10) ...any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

8 U.S.C. § 1105(a)(1996). Through § 106, Congress had expressly conferred jurisdiction upon the courts to hear the appeals of aliens seeking to challenge the final deportation orders of the BIA.

On April 24, 1996, during the pendency of Petitioner's appeal to our Court, § 106 was amended by the enactment of § 440(a) of the AEDPA. Section 440(a) revoked the judiciary's jurisdiction to review final orders of deportation against aliens who had been convicted of certain, enumerated, criminal offenses. In its entirety, § 440(a) reads as follows:

Sec. 440. CRIMINAL ALIEN REMOVAL.

> (a) JUDICIAL REVIEW. -- Section 106 of the Immigration and Nationality Act (8 U.S.C. 1105a(a)(10))is amended to read as follows:

> "(10) Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(I), shall not be subject to review by any court.".

AEDPA, Pub. Law No. 104-132, § 440(a), 110 Stat. 1214 (1996)(to be codified at 8 U.S.C. § 1105a(a)(10)). Thus, § 440(a) effectively eliminates all judicial review of certain criminal alien appeals, and, correspondingly, our sole source of appellate jurisdiction to

hear such cases.  This much is not in dispute.  What the parties do dispute is the effective date of the § 440(a) amendment.

The AEDPA, which contains more than 100 pages, is organized by Title, Section, and Sub-Section.  While there is no one effective date which governs all of the provisions within the AEDPA, Title IV, within which § 440(a) is found, contains specific effective dates for several of its Sections and Sub-Sections.  The question before us is whether Congress has expressly prescribed an effective date for § 440(a).  After carefully reviewing the AEDPA, and Title IV, in particular, we conclude that Congress has not expressly provided an effective date for § 440(a).[4]

---

[4]Within Title IV, and pertaining to Section 106 of the Immigration and Nationality Act of 1996, 8 U.S.C. § 1105a(a), the only clear expressions of effective dates are found within §§ 401(f) and 440(f):

> *§ 401(f)* states: "The amendments made by this section [§ 401] shall take effect on the date of enactment of this Act and shall apply to all aliens without regard to the date of entry or attempted entry into the United States."

> *§ 440(f)* states: "The amendments made by <u>subsection (e)</u> shall apply to convictions entered on or after the date of the enactment of this Act, except that the amendment made by subsection (e)(3) shall take effect as if included in the enactment of section 222 of the Immigration Technical Corrections Act of 1994." (Emphasis added.)

Section 401(f) applies to the change made in § 401(e) which results, *inter alia*, in the striking of paragraph 10 from § 1105(a).  Congress expressly stated that the amendment to remove paragraph 10 is to be effective immediately and shall apply to all aliens regardless of date of entry.  We can assume that Congress intended that the deletion of paragraph 10 from § 1105(a) was to occur simultaneously with its amendment, as accomplished by § 440(a).  However, Congress has not spoken as to whether such amendments apply retroactively to pending cases. The effective date in § 440(f) applies only to the changes made in § 440(e), none of

7

Given the absence of guiding instructions from Congress, we next ask whether § 440(a) is the type of provision which should govern cases arising before its enactment. **Landgraf**, 114 S. Ct. at 1505. Because § 440(a) explicitly affects jurisdiction, it speaks to the power of the court, rather than to the rights or obligations of the parties. As such, it is easily classified as jurisdictional in nature. We, therefore, must presume that § 440(a)'s bar of judicial review retroactively applies in this action.[5]

Rebuttal of this presumption requires some showing that the jurisdictional nature of this action curtailed one or more of Petitioner's substantive rights. Petitioner does not challenge the fact that he is an alien properly found deportable by reason of his conviction of an aggravated felony; his sole ground of appeal is the allegation that the BIA abused its discretion in determining that, although eligible for § 212(c) relief, he did not merit a favorable exercise of discretionary relief thereunder. Petitioner has failed to show that any of his substantive rights has been curtailed. We hold that Petitioner has not rebutted the presumption of § 440's retroactive application. Accordingly, § 440(a) bars judicial review of the BIA decision in this case.

## CONCLUSION

which affect § 1105(a).

[5]By so holding, we offer no opinion as to whether the various remaining Titles, Sections, and Sub-sections, of the AEDPA require retroactive application.

8

Having found that § 440(a) of the AEDPA applies retroactively to the pending appeal of Petitioner, we **DISMISS** Petitioner's case for lack of subject matter jurisdiction.