Masud HOMAYUN, Petitioner,

v.

**Richard CRAVENER, Respondent.**

No. Civ.A. H–98–2737.

United States District Court, S.D. Texas.

March 19, 1999.

Peter D. Williamson, Peter D. Williamson and Associates, Houston, TX, for Masud Homayun, petitioner.

Howard E. Rose, Office of U.S. Attorney, Houston, TX, for Richard Cravener, District Director Immigration and Naturalization Service Houston, respondent.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

### I. *Introduction*

Petitioner Masud Homayun ("Homayun") challenges his continued confinement pursuant to an order of the Board of Immigration Appeals ("BIA") that he be deported to his native country of Afghanistan. Having reviewed the pending motions, the submissions of the parties,

the pleadings, and the applicable law, this court is of the opinion that Homayun's petition for writ of habeas corpus (# 1) and motion for summary judgment (# 6) should be granted in part and the matter remanded to the BIA for a decision on the appeal of his waiver of deportation and that Respondent Richard Cravener's ("Cravener") motion to dismiss (# 4) and cross-motion for summary judgment (# 16) should be denied.

## II. *Background*

Homayun is a native and a citizen of Afghanistan. As a child in 1984, he sought refuge in the United States with his mother and sisters. He was approved for refugee status by the United States Department of Justice on September 3, 1984, and became a permanent resident alien of the United States on September 25, 1985. Between 1990 and 1991, Homayun was convicted of six charges of theft and one charge of credit card abuse, for which he was sentenced to ten years imprisonment for each offense, with the sentences to run concurrently. For at least five of those offenses, Homayun initially received deferred adjudication and was placed on probation beginning October 12, 1990. Within ten days of being released on probation, he committed two additional offenses resulting in the revocation of his probation and conviction of all seven offenses. During the same time period, he was also convicted of the offense of unauthorized use of a motor vehicle. On January 7, 1992, the deputy district director of the Immigration and Naturalization Service ("INS") issued an order to show cause why Homayun should not be deported as a result of his convictions under § 241(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1251, which provided that an alien is subject to deportation if convicted of two or more crimes involving moral turpitude. Before the immigration court, Homayun filed for relief from deportation, for asylum and withholding of deportation, and for a waiver of deportation under § 212(c) of the INA, codified at 8 U.S.C. § 1182(c) (since replaced by a similar provision, 8 U.S.C. § 1229b(b)). On June 4, 1992, the immigration judge ("IJ") found Homayun deportable, denying him asylum and the withholding of deportation. The IJ, after balancing such factors as the existence and nature of Homayun's criminal record, evidence of bad character, evidence of hardship that could occur to Homayun or his family in the event of his deportation, and his young age, granted Homayun a waiver of deportation under § 212(c), permitting him to remain in the United States. The INS appealed the decision to the BIA, and briefs were filed by both parties in 1992, but the case was not reviewed until March 1997.

On March 19, 1997, the BIA held that due to an intervening change in the law— § 440(d) of the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")—the § 212(c) waiver was no longer available to Homayun and ordered that he be deported to Afghanistan. On April 29, 1997, Homayun moved to reopen the deportation proceedings. His motion was granted, but on August 1, 1997, he was again ordered to be deported. Homayun appealed this decision to the Fifth Circuit on August 28, 1997, which dismissed the case on December 9, 1997, for want of jurisdiction under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").

On October 21, 1997, Homayun filed another motion to reopen, which was denied on October 13, 1998. On April 7, 1998, the INS entered an order that Homayun be deported on May 11, 1998. He obtained a stay of deportation, and on August 19, 1998, Homayun filed his petition for writ of habeas corpus on the grounds that the BIA decision that Homayun is statutorily ineligible for relief under § 212(c) is an unlawful retroactive application of the law and violates his right to equal protection under the United States Constitution. He also claims that "the retroactive application of the expanded definition of 'aggra-

vated felony' to Homayun's crimes, by the IIRIRA, which makes him ineligible for relief from deportation violates Homayun's rights to due process of law." Finally, he seeks a declaration that he is eligible to apply for protection from deportation to Afghanistan under the Convention Against Torture, a United Nations treaty to which the United States is party. He also seeks attorneys' fees under the Equal Access to Justice Act, costs of court, and any other appropriate relief.

On August 24, 1998, Cravener moved to dismiss this action for lack of subject matter jurisdiction on the ground that Homayun brought his habeas petition more than thirty days after the deportation order was issued, in contravention of § 309(c)(4)(C) of the IIRIRA requiring that petitions for judicial review be filed within thirty days. In a supplement to his motion, Cravener alleged that § 440(a) of the AEDPA and § 309(c)(4)(G) of the IIRIRA preclude judicial review of deportation orders of aliens such as Homayun who are deportable due to their commission of certain crimes, and that 8 U.S.C. § 1252(g) precludes judicial review of deportation orders in federal district courts. He further argues that Homayun's petition does not allege a constitutional claim or a violation that amounts to a fundamental miscarriage of justice. He also contends that the AEDPA applies retroactively to preclude Homayun from § 212(c) relief. Cravener additionally maintains that the AEDPA's distinction between deportable and excludable aliens does not violate an alien's equal protection rights because the two classes are not similarly situated or, alternatively, that the distinction is based on a facially legitimate and *bona fide* reason. Cravener finally asserts that the expanded definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43) applies to Homayun under the express language of the statute.

On September 4, 1998, Homayun responded to Cravener's motion and moved for summary judgment on his petition, requesting that his case be remanded to the BIA for a decision on the § 212(c) appeal. In a supplement to his motion, Homayun alleges that a retroactive application of AEDPA § 440(d) also violates his due process rights under the United States Constitution. Cravener filed a cross-motion for summary judgment, arguing that even if the court has jurisdiction to review Homayun's deportation order, Homayun has failed to "establish the substantial constitutional issues needed for jurisdiction to review a criminal alien's deportation order."

## III. *Analysis*

### A. *Timeliness of Petition*

 Cravener argues that the court lacks subject matter jurisdiction over this action because Homayun's petition was untimely filed. In support of his argument, Cravener points to IIRIRA § 309(c)(4)(C), which provides that a petition for judicial review must be filed no later than thirty days after the issuance of a final order of deportation. Homayun filed his petition for a writ of habeas corpus well over a year after the BIA issued its final order of deportation. Contrary to Cravener's contentions, however, the thirty-day period applies only to petitions for direct review of a deportation order, not to petitions for collateral review such as those for writs of habeas corpus. As the Third Circuit explained:

> We can presume that Congress, in enacting AEDPA and IIRIRA, was cognizant of the Court's differentiation between "judicial review" on the one hand and writs of habeas corpus on the other. "It is always appropriate to assume that our elected representatives, like other citizens, know the law .... [I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with these unusually important precedents from this and other federal courts and that it expected its enactment to be interpreted in conformity with them."

*Sandoval v. Reno,* 166 F.3d 225, 235 (3d Cir.1999) (quoting *Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 699, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)).

Cravener cites case law from the Fifth Circuit and the Southern District of Texas in support of his argument that the thirty-day limitations period applies to habeas petitions as well as to direct judicial review. Those cases, however, are distinguishable from the case at bar. For example, in *Men Keng Chang v. Jiugni,* the Fifth Circuit concluded that the petitioner's failure to file a direct appeal of a deportation order within the statutory period precluded him from later challenging the order in a habeas petition. *See* 669 F.2d 275, 277 (5th Cir.1982). Similarly, in *Okechukwu v. United States,* the Southern District of Texas held that a writ of habeas corpus was unavailable when, prior to petitioning for habeas corpus relief, the petitioner had failed to seek direct review in the appropriate court within the statutory time period. *See* 825 F.Supp. 139, 140, 143 (S.D.Tex.1993). Likewise, in *Singh v. INS,* the court found that the petitioner "never appealed the BIA's decision to the Fifth Circuit Court of Appeals," thereby "deliberately bypass[ing] the statutorily prescribed method of judicial review of his case" and precluding him "from raising those claims by habeas proceedings in this Court." *See* 825 F.Supp. 143, 146 (S.D.Tex.1993). Each of these cases, therefore, involved a habeas petitioner who had failed to pursue a direct appeal of a deportation order in a timely manner before seeking collateral relief via a habeas corpus petition. "[D]eliberate bypass of the statutory remedy of direct review by the appropriate court of appeals should render habeas relief unavailable." *Singh,* 825 F.Supp. at 145 (citing *United States ex rel. Marcello v. District Director of INS,* 634 F.2d 964, 970 (5th Cir.1981)). That is not the situation here, as it is uncontested that Homayun appealed the deportation order of the BIA to the Fifth Circuit within thirty days of its issuance.

Instead, Homayun bases his petition for a writ of habeas corpus on 28 U.S.C. § 2241, which does not impose a time limit for persons in custody seeking post-conviction relief. *See United States v. Flores,* 135 F.3d 1000, 1006 (5th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 846, 142 L.Ed.2d 700 (1999). The AEDPA amended two other statutory provisions relating to writs of habeas corpus, 28 U.S.C. §§ 2244 and 2255, to provide for a one-year statute of limitations. *See Kiser v. Johnson,* 163 F.3d 326, 327 n. 2 (5th Cir. 1999); *Flores,* 135 F.3d at 1001. The limitations period imposed in § 2244 applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court," while the limitations period set forth in § 2255 applies to "prisoner[s] in custody under sentence of a court established by Act of Congress." 28 U.S.C. §§ 2244, 2255. Section 2241, however, which has traditionally been held to apply to aliens seeking relief from deportation orders, was not amended to include a limitations period. *See Sandoval,* 166 F.3d at 234; *Goncalves v. Reno,* 144 F.3d 110, 120 (1st Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). The Fifth Circuit has held that state and federal prisoners whose criminal convictions became final prior to the enactment of the AEDPA had one year from the April 24, 1996, effective date of the AEDPA to petition for habeas corpus relief. *See Kiser,* 163 F.3d at 327 (citing *Flores,* 135 F.3d at 1006). The Fifth Circuit cases addressing limitations involve habeas petitions filed under either 28 U.S.C. § 2254 or § 2255, not petitions for relief under § 2241. It appears, therefore, that petitioners relying on § 2241 are not subject to the one-year limitations period set forth in other provisions of the AEDPA. In any event, Homayun filed his petition for habeas corpus relief on August 19, 1998, less than one year after the Fifth Circuit's dismissal of his appeal of the deportation order on December 9, 1997.

B. *Availability of Habeas Corpus Relief to Deportable Aliens*

The United States Supreme Court has long held that habeas corpus relief is available to aliens in the custody of the United States on orders of deportation. *See Heikkila v. Barber,* 345 U.S. 229, 235, 73 S.Ct. 603, 97 L.Ed. 972 (1953); *see also Henderson v. INS,* 157 F.3d 106, 121 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, —— L.Ed.2d —— (1999); *Goncalves,* 144 F.3d at 124; *Marcello,* 634 F.2d at 966–67; *Farquharson v. INS,* 31 F.Supp.2d 403, 410 (D.N.J.1999). Before it was repealed in 1996, § 106(a)(10) of the INA provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105a(a)(10); *see Mendez–Rosas v. INS,* 87 F.3d 672, 675 (5th Cir.1996), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997); *Perez v. Reno,* 18 F.Supp.2d 674, 677 (W.D.Tex.1998); *see also Sabino v. Reno,* 8 F.Supp.2d 622, 629–30 (S.D.Tex.1998). This provision directed that "the sole and exclusive procedure for . . . the judicial review of all final orders of deportation" was that set forth in the Hobbs Act, which gave exclusive jurisdiction to the court of appeals. *Reno v. American–Arab Anti–Discrimination Comm.,* —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) (quoting 8 U.S.C. § 1105a); *see* 28 U.S.C. § 2341 *et seq.* (Hobbs Act). The traditional writ of habeas corpus under 28 U.S.C. § 2241 remained an alternate basis to INS § 106(a)(10) and (b) for federal court jurisdiction over habeas cases. *See Sabino,* 8 F.Supp.2d at 629–30. The AEDPA, effective on April 24, 1996, eliminated INA § 106(a)(10). *See Perez,* 18 F.Supp.2d at 677 (citing AEDPA § 401(e)); *Sabino,* 8 F.Supp.2d at 630. Section 440(a) of the AEDPA replaced INA § 106(a)(10) with the following provision:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D) or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(I), shall not be subject to review by any court.

*See* 8 U.S.C. § 1105a(10) (repealed); *see also Sandoval,* 166 F.3d at 229 n. 1; *Mendez–Rosas,* 87 F.3d at 675; *Perez,* 18 F.Supp.2d at 677–78. These offenses include those involving moral turpitude. *See* INA § 241(a)(2)(A)(ii) (1991) (current version at 8 U.S.C. § 1227). Section 1105a was replaced by IIRIRA § 306(b) with respect to deportation proceedings that were initiated on or after April 1, 1997, and by IIRIRA § 309(c)(4)(G) with respect to proceedings that began prior to April 1, 1997. *See Sandoval,* 166 F.3d at 228–29.

The Fifth Circuit has held that § 440(a) of the AEDPA, a provision affecting the appellate jurisdiction of federal courts in deportation cases, applies retroactively to proceedings that were pending when the AEDPA was enacted. *See Sabino,* 8 F.Supp.2d at 630 (citing *Mendez–Rosas,* 87 F.3d at 676); *see also Okoro v. INS,* 125 F.3d 920, 923 (5th Cir.1997); *Hernandez–Rodriguez v. Pasquarell,* 118 F.3d 1034, 1045 (5th Cir.1997). "Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.'" *Landgraf v. USI Film Prods.,* 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quoting *Hallowell v. Commons,* 239 U.S. 506, 508, 36 S.Ct. 202, 60 L.Ed. 409 (1916)). "Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Id.* (quoting *Republic Nat'l Bank of Miami,* 506 U.S. 80, 100, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)); *see Okoro,* 125 F.3d at 923, 924 n. 7.

"Every circuit court that has construed section 440(a) has held that it eliminates direct appellate review under INA section 106(a) of deportation orders for the de-

fined class of criminal aliens." *Sabino*, 8 F.Supp.2d at 630 (citing *Williams v. INS*, 114 F.3d 82, 83 (5th Cir.1997)); *see Mendez–Rosas*, 87 F.3d at 675 ("[t]hus, § 440(a) effectively eliminates all judicial review of certain criminal alien appeals, and, correspondingly, our sole source of appellate jurisdiction to hear such cases"); *see also Pichardo v. INS*, 104 F.3d 756, 759–60 (5th Cir.1997). "Most of these courts, however, have concluded that criminal deportees retain some opportunity to seek judicial relief, generally because of concerns that cutting off all judicial review would violate the Suspension Clause or the Due Process Clause." *Sabino*, 8 F.Supp.2d at 630 (citing *Williams*, 114 F.3d at 84). "Numerous district courts have held that section 440(a) did not repeal habeas jurisdiction under 28 U.S.C. § 2241 to review deportation orders." *Id.; see Then v. INS*, No. Civ. A. 98–5523, 1998 WL 967533, at *7 (D.N.J. Dec.14, 1998); *De Sousa v. Reno*, 30 F.Supp.2d 844, 849 (E.D.Pa.1998); *Calderon v. Reno*, No. 98–C–552, 1998 WL 867413, at *5 (N.D.Ill. Dec.3, 1998); *Lee v. Reno*, 15 F.Supp.2d 26, 39 (D.D.C.1998); *Cantu–Salinas v. Trominski*, No. CA B–97–183, slip op. at 4 (S.D.Tex. June 12, 1998) (report and recommendation, adopted August 26, 1998). Moreover, numerous courts that have considered whether claims regarding the retroactive application of AEDPA § 440(d) fall within the scope of § 2241 review have held that they do. *See Farquharson*, 31 F.Supp.2d at 409–10.

On September 30, 1996, Congress enacted the IIRIRA. *See Perez*, 18 F.Supp.2d at 678; *Sabino*, 8 F.Supp.2d at 630. The IIRIRA repealed INA § 106, and replaced it with INA § 242, entitled, "Judicial Review of Orders of Removal." *See Perez*, 18 F.Supp.2d at 678 (citing IIRIRA § 306 (codified at 8 U.S.C.A. § 1252 (West Supp. 1998))); *Sabino*, 8 F.Supp.2d at 631. Significantly, § 306(a)(2)(C) of the IIRIRA replaced § 440(a) of the AEDPA, and provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal

against an alien who is removable by reason of having committed a criminal offense." *See Perez*, 18 F.Supp.2d at 678. "[T]he general rule set forth in § 309(c)(1) of IIRIRA is that the revised procedures for removing aliens, including the judicial-review procedures of § 1252, do not apply to aliens who were already in either exclusion or deportation proceedings on IIRIRA's effective date." *American–Arab Anti–Discrimination Comm.*, — U.S. —, at —, 119 S.Ct. 936, 940 142 L.Ed.2d 940. The exception to this rule is the new § 1252(g), INA § 242(g), created by § 306(a) of the IIRIRA, entitled "Exclusive Jurisdiction." *See Perez*, 18 F.Supp.2d at 678 (citing 8 U.S.C.A. § 1252(g) (West Supp.1998)). The new INA § 242(g) provides:

> Except as provided in this section and notwithstanding any other provisions of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

*See American–Arab Anti–Discrimination Comm.*, — U.S. —, at —, 119 S.Ct. 936, 940, 142 L.Ed.2d 940; *Perez*, 18 F.Supp.2d at 678. Section 306(c)(1) of the IIRIRA directs that this particular provision applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings." *American–Arab Anti–Discrimination Comm.*, — U.S. —, at —, 119 S.Ct. 936, 940, 142 L.Ed.2d 940.

The IIRIRA also contains "transitional rules," which apply to aliens whose deportation proceedings were commenced before April 1, 1997. *See Perez*, 18 F.Supp.2d at 678 (citing IIRIRA § 309); *see also Sabino*, 8 F.Supp.2d at 631. One of these transitional rules is IIRIRA § 309(c)(4)(G), which provides:

> [T]here shall be no appeal permitted in the case of an alien who is inadmissible

or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(I) of such Act (as so in effect).

This provision replaces INA § 106, as amended by AEDPA § 440(a), and has not been codified. *See Sandoval*, 166 F.3d at 228 n. 1, 229 n. 3.

It is generally recognized that:

judicial review of exclusion and deportation proceedings pending before April 1, 1997, is governed by INA section 106, as amended by the AEDPA. But if the final order of exclusion or deportation is entered after October 31, 1996, review under section 106 is modified by the transitional rules.

*Sabino*, 8 F.Supp.2d at 632. Because Homayun's deportation proceeding began in 1992 and was thus pending before April 1, 1997, and his deportation order became final in 1997, both INA § 106 and the transitional rules govern this case. *See id.*

Although the AEDPA and IIRIRA limit the jurisdiction of the courts, the issue of whether district courts retain statutory and constitutional habeas corpus jurisdiction for petitions brought by aliens subject to deportation or exclusion orders remains unsettled. *See Perez*, 18 F.Supp.2d at 680. "Aliens in custody of federal immigration officials have traditionally been able to obtain review of immigration decisions by petitioning for a writ of habeas corpus under what is now § 2241 ... even in the face of statutory language precluding all other review." *Goncalves*, 144 F.3d at 120, 121 (citing *Heikkila*, 345 U.S. at 233–35, 73 S.Ct. 603); *see Sandoval*, 166 F.3d at 231–32, 234. "Congress was explicit that it was striking the reference to habeas in old

INA § 106(a)(10). It did not, in contrast, expressly amend or alter 28 U.S.C. § 2241." *Goncalves*, 144 F.3d at 121. "Congress is constitutionally empowered to curtail the habeas jurisdiction of the lower federal courts if it so chooses." *Umanzor v. Lambert*, 782 F.2d 1299, 1304 (5th Cir.1986).

A number of courts, including the Fifth Circuit, have concluded that lower federal courts retain some degree of habeas corpus jurisdiction in deportation cases. *See Lerma de Garcia v. INS*, 141 F.3d 215, 217 (5th Cir.1998) (noting that the Fifth Circuit has held that deportees may apply for writs of habeas corpus); *Nguyen v. INS*, 117 F.3d 206, 207 (5th Cir.1997) (same); *Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C.Cir.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 1139, 143 L.Ed.2d 207 (1999) (holding that habeas review remains available to raise substantial constitutional questions); *Williams*, 114 F.3d at 84 (noting that a "limited opportunity to apply for a writ of habeas corpus may remain"); *see also Cedillo–Gonzalez v. Garcia*, 38 F.Supp.2d 479, ——, 1999 WL 115030, at *6 (W.D.Tex.1999); *Perez*, 18 F.Supp.2d at 680 (citing *Mansour v. INS*, 123 F.3d 423, 426 (6th Cir.1997); *Kolster v. INS*, 101 F.3d 785, 790 (1st Cir.1996); *Hincapie–Nieto v. INS*, 92 F.3d 27, 30 (2d Cir.1996)). The courts, however, have not utilized the same reasoning in exercising jurisdiction. *See id.* Some courts have explicitly relied on § 2241 (the so-called "statutory writ") for habeas jurisdiction. *See id.* (citing *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1091 (D.Colo.1997); *Mojica v. Reno*, 970 F.Supp. 130, 160 (E.D.N.Y.1997), *aff'd in part, dismissed in part on other grounds*, 157 F.3d 106 (2d Cir.1998)). Other courts, however, have concluded that the IIRIRA abolishes habeas corpus review under § 2241, leaving only the Suspension Clause of the United States Constitution for habeas jurisdiction. *See id.* (citing *Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997); *Rusu v.*

*Reno,* 999 F.Supp. 1204, 1210 (N.D.Ill. 1998) (district courts retain habeas jurisdiction within the narrow jurisdictional scope of the Suspension Clause, but not pursuant to § 2241)). The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. 1, § 9, cl. 2; *see Felker v. Turpin,* 518 U.S. 651, 663, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). Still other courts have decided that district courts no longer retain any habeas jurisdiction, reasoning that habeas-type claims must be brought in the appropriate court of appeals. *See LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir.1998); *Richardson v. Reno,* 162 F.3d 1338, 1378 (11th Cir.1998); *see also Perez,* 18 F.Supp.2d at 680 (citing *Hose v. INS,* 141 F.3d 932, 935 (9th Cir.1998)); *Then,* 37 F.Supp.2d at 354.

The Fifth Circuit has recognized that " 'limited opportunity to apply for a writ of habeas corpus may remain' for aliens facing deportation." *Cedillo–Gonzalez,* 38 F.Supp.2d at ——, 1999 WL 115030, at *5 (quoting *Williams,* 114 F.3d at 84 (noting similar conclusions by other circuits)); *see Sandoval,* 166 F.3d at 238; *Henderson,* 157 F.3d at 111; *Goncalves,* 144 F.3d at 121, 123. In *Lerma de Garcia,* the petitioner filed a direct appeal in the Fifth Circuit of a BIA decision that she was ineligible for relief under § 212(c). *See* 141 F.3d at 216. The Fifth Circuit held that it lacked jurisdiction to hear the appeal, noting, however, that the petitioner could apply for a writ of habeas corpus. *See id.* at 217 (citing *Mansour,* 123 F.3d at 426; *Nguyen,* 117 F.3d at 207; *Williams,* 114 F.3d at 84; *Kolster,* 101 F.3d at 790; *Hincapie–Nieto,* 92 F.3d at 30). In *Williams,* the petitioner also sought judicial review in the Fifth Circuit of the BIA's denial of relief under § 212(c). *See* 114 F.3d at 83. The court held that AEDPA § 440(a) withdrew from the court of appeals jurisdiction to review the BIA's decision, while agreeing with other circuit courts that a limited opportunity to seek habeas corpus relief may remain through, at a minimum, the Suspension Clause. *See id.* at 84 (quoting *Yang,* 109 F.3d at 1194–97).

In a recent case from this jurisdiction, Judge Sim Lake noted:

> In the past two years numerous aliens who were barred from seeking direct review of deportation orders in the circuit courts by AEDPA section 440(a) have filed habeas corpus petitions in federal district courts. Almost without exception, the district courts have found jurisdiction to review these petitions under the traditional writ of habeas corpus statute, 28 U.S.C. § 2241.

*Olvera v. Reno,* 20 F.Supp.2d 1062, 1064 (S.D.Tex.1998). The court found, however, that "section 440(a) expressly repeals all federal court jurisdiction over the deportation orders of the defined class of criminal aliens, including jurisdiction under § 2241." *Id.* "Nevertheless, because the Fifth Circuit said in *Williams* that the Constitution prevents Congress from suspending the writ of habeas corpus for the class of criminal deportees to which [the petitioner] belongs, ... the court must assume that habeas jurisdiction is constitutionally required in this case despite the language of section 440(a)." *Id.* (citing *Williams,* 114 F.3d at 84). "[C]ourts are generally agreed that jurisdiction under § 2241 must extend at least to claims of substantial constitutional error." *Id.* at 1065 (citing *Sabino,* 8 F.Supp.2d at 638). Mere changes in the law, whether statutory or administrative, cannot form the sole basis for habeas relief. *See Hernandez–Rodriguez,* 118 F.3d at 1044 (citing *Dunn v. Maggio,* 712 F.2d 998, 1001 (5th Cir. 1983), *cert. denied,* 465 U.S. 1031, 104 S.Ct. 1297, 79 L.Ed.2d 697 (1984); *Rubio v. Estelle,* 689 F.2d 533, 536 (5th Cir.1982)). In *Olvera,* the court determined that the petitioner raised the possibility of substantial constitutional error when he claimed that the BIA's determination that he was ineligible for a § 212(c) waiver violated his

right to the equal protection of the laws. *See* 20 F.Supp.2d at 1065. Similarly, Homayun claims a violation of his rights under the Equal Protection Clause and the Due Process Clause, thus raising the specter of substantial constitutional error. Therefore, in keeping with the weight of authority, the court concludes that jurisdiction to entertain Homayun's petition exists at least under the Suspension Clause of the United States Constitution.

### C. *Retroactivity of AEDPA § 440(d)*

■ Before the INA was amended by the AEDPA, § 212(c) of the INA permitted deportable aliens to apply to the Attorney General for a discretionary grant of a waiver of deportation:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

8 U.S.C. § 1182(c) (1992). This provision was deemed to apply not only to aliens in exclusion proceedings but also to aliens facing deportation. *See Hussein v. INS*, 61 F.3d 377, 379 (5th Cir.1995) (citing *Francis v. INS*, 532 F.2d 268, 272–73 (2d Cir.1976)). Section 212(c), as amended by AEDPA § 440(d), provides:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are re-turning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title. *This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(I).*

*See* 8 U.S.C. § 1182(c) (emphasis added) (repealed with respect to proceedings commenced on or after April 1, 1997). Homayun does not dispute that he is among the group of criminal aliens described in AEDPA § 440(d). He argues, however, that § 440(d) does not apply to him because his § 212(c) application was already pending when the AEDPA was enacted, and that, therefore, application of AEDPA § 440(d) in his situation would be impermissibly retroactive.

■■ In *Matter of Soriano*, the United States Attorney General, reversing a decision of the BIA, issued an opinion that § 440(d) was to be applied retroactively to petitioners such as Homayun whose deportation proceedings were commenced before the AEDPA became effective. *See* Int. Dec. No. 3289, 1996 WL 426888 (A.G. Feb. 21, 1997); *see also Farquharson*, 31 F.Supp.2d at 405–06. This court, however, need not defer to the opinion of the Attorney General. *See Goncalves*, 144 F.3d at 127; *Vargas v. Reno*, 966 F.Supp. 1537, 1544 (S.D.Cal.1997). As the Supreme Court held in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."

467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *see Henderson,* 157 F.3d at 130. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778; *see Farquharson,* 31 F.Supp.2d at 414. "Therefore, 'that is the end of the matter.' " *Id.* (quoting *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778); *see Henderson,* 157 F.3d at 130.

 "[S]tatutory retroactivity has long been disfavored." *Landgraf,* 511 U.S. at 268, 114 S.Ct. 1483. The presumption against retroactive legislation is "deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Id.* at 265, 114 S.Ct. 1483 (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 842–44, 855–56, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)); *see Hughes Aircraft Co. v. United States,* 520 U.S. 939, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 (1997); *Rocha,* 109 F.3d at 228. "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483 (citing *General Motors Corp. v. Romein,* 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992)). For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Kaiser Aluminum & Chem. Corp.,* 494 U.S. at 855, 110 S.Ct. 1570 (Scalia, J., concurring); *see Landgraf,* 511 U.S. at 265, 114 S.Ct. 1483. Nonetheless, it has also long been recognized that under many circumstances, a court should apply the law that is in effect at the time it makes its decision. *See id.* at 273, 114 S.Ct. 1483. If a statute enacted after the occurrence of the underlying event authorizes or affects the propriety of relief that is only prospective in nature, applying the new statute to the action does not constitute an impermissible retroactive application. *See id.*

 "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at 270, 114 S.Ct. 1483; *see Mendez–Rosas,* 87 F.3d at 674. The first step requires a determination of whether Congress expressly indicated its intention that the law be applied retroactively. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *Hernandez–Rodriguez,* 118 F.3d at 1044; *United States v. Rocha,* 109 F.3d 225, 228 (5th Cir.1997); *Mendez–Rosas,* 87 F.3d at 674; *see also Hughes Aircraft Co.,* 117 S.Ct. at 1876. "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988); *see Landgraf,* 511 U.S. at 270, 114 S.Ct. 1483. "If Congress has clearly expressed an intention that a statute be applied retroactively, then the statute should be construed in accordance with that intent." *Mendez–Rosas,* 87 F.3d at 674; *see Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 226, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *Landgraf,* 511 U.S. at 268, 114 S.Ct. 1483. If, however, Congress has not made its intentions clear, the court must analyze whether normal rules of statutory construction suggest that the new statute should be applied to the case before it. *See Flores,* 135 F.3d at 1003 (quoting *Williams v. Cain,* 117 F.3d 863, 864 (5th Cir.1997) (citing *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2063–64, 138 L.Ed.2d 481 (1997))). The court must look to the nature of the statute presented and determine whether application of the new law would have a retroactive effect on the relevant party, *i.e.,* by attaching new legal consequences to events completed before

the new law was enacted. *See Landgraf,* 511 U.S. at 269–70, 280, 114 S.Ct. 1483; *Mendez–Rosas,* 87 F.3d at 674. A law has a retroactive effect if its application would affect the substantive rights a party possessed when he acted—for example, by increasing his liability for his past conduct, or imposing new duties on the party with respect to transactions he has already completed. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *Rocha,* 109 F.3d at 228; *Mendez–Rosas,* 87 F.3d at 674. If application of the statute would have a retroactive effect, the presumption against retroactivity teaches that the statute does not govern absent a showing of clear congressional intent favoring such a result. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483; *Rocha,* 109 F.3d at 228; *Mendez–Rosas,* 87 F.3d at 674.

The United States Supreme Court in *Lindh* further clarified the rules of statutory construction. *See* 117 S.Ct. at 2062–67; *see also Sandoval,* 166 F.3d at 240. The Court stated that "[i]n determining whether a statute's terms would produce a retroactive effect, . . . and in determining a statute's temporal reach generally, our normal rules of construction apply." *Lindh,* 117 S.Ct. at 2063. The Court also clarified that the rule of negative implication, where one can read intent into Congress's treatment of one set of rules differently than another, is part of the normal rules of statutory construction. *See Sandoval,* 166 F.3d at 240 (citing *Lindh,* 117 S.Ct. at 2064); *Farquharson,* 31 F.Supp.2d at 415. The Fifth Circuit has "interpreted *Lindh* as articulating a generally-applicable 'analysis governing the temporal reach of newly enacted legislation.'" *Flores,* 135 F.3d at 1003 (quoting *Williams,* 117 F.3d at 864).

Section 440(d) does not contain an effective date. The only clear expressions of effective dates within the relevant portions of the AEDPA are found in § 401(f) ("The amendments made by [§ 401] shall take effect on the date of enactment of this Act and shall apply to all aliens without regard to the date of entry or attempted entry into the United States") and § 440(f) ("The amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act, except that the amendment made by subsection (e)(3) shall take effect as if included in the enactment of section 222 of the Immigration Technical Corrections Act of 1994"). *Mendez–Rosas,* 87 F.3d at 675 n. 4.

In situations similar to the present case, a number of courts have held that aliens whose deportation actions were pending at the time § 440(d) was enacted can pursue habeas review of claims involving § 212(c). *See Sandoval,* 166 F.3d at 241; *Goncalves,* 144 F.3d at 126–33; *Henderson,* 157 F.3d at 129; *Farquharson,* 31 F.Supp.2d at 416; *Garcia–Toscano v. Trominski,* C.A. No. B–97–183–02, slip op. at 2 (S.D.Tex. Aug. 26, 1998) (Memorandum Order); *Regalado–Gutierrez v. Trominski,* C.A. No. B–97–183–03, slip op. at 2 (S.D.Tex. Aug. 26, 1998) (Memorandum Order); *Perez,* 18 F.Supp.2d at 682–83; *Lee,* 15 F.Supp.2d at 46; *Cantu–Salinas,* No. CA B–97–183, slip op. at 7; *Pak v. Reno,* 8 F.Supp.2d 1001, 1008 (N.D.Ohio 1998). The underlying rationale for these decisions is that the retroactive application of § 440(d) would be in contravention of the rules of statutory construction and the legislative history of the provision. A few courts have found otherwise. *See Laguerre v. Reno,* No. 97 C 8225, 1998 WL 100238, at *11 (N.D.Ill. Feb.17, 1998), *modified,* 164 F.3d 1035 (7th Cir.1998) (AEDPA § 440(d) should apply retroactively, reasoning that the section does not impair any rights the deportable alien had when he committed the crime for which § 440(d) rendered him ineligible to apply for discretionary relief and that § 440(d) only limits the discretionary relief available); *Vargas,* 966 F.Supp. at 1544 (application of § 440(d) to a deportable alien who had been granted § 212(c) relief before the AEDPA was enacted is not a retroactive application of the law).

In *Sandoval,* the Third Circuit considered "whether AEDPA § 440(d), a statuto-

ry change that occurred while Sandoval's case was pending and that makes aliens [such as Sandoval] who have been found guilty of drug offenses ineligible for discretionary relief under § 212(c) of the [INA] applies to Sandoval." *See* 166 F.3d at 227. Following the statutory rules of construction set forth by the United States Supreme Court in *Landgraf* and elaborated on in *Lindh*, the court held that the "AEDPA does contain an expression of congressional intent and that Congress's intent was that the AEDPA amendment to § 212(c) was not to be applied to pending cases." *Id.* at 240. In so holding, the court noted that several other sections of the AEDPA expressly provide that they apply to cases pending on the AEDPA's effective date. *See id.* at 241. The court also examined the legislative history of the § 212(c) revision, noting that the Senate version of the bill contained a provision to make the law retroactive, but this provision was deleted in the final version. *See id.* The court concluded, "Thus, according to the *Lindh* Court's explication of *Landgraf*, we can discern by negative implication that AEDPA § 440(d) was not intended to apply to cases pending on the date of enactment." *Id.* at 240.

The petitioner in *Perez*, who was admitted to the United States as a permanent resident alien, was convicted and sentenced for the offense of aggravated assault. *See* 18 F.Supp.2d at 676. As a result of the conviction, the INS initiated deportation proceedings against him under INA § 241(a)(2)(A)(iii). *See id.* (citing 8 U.S.C. § 1251(a) (transferred to § 1227) (West Supp.1998)). Perez admitted deportability and applied for a § 212(c) waiver. *See id.* The INS moved to pretermit his application on the ground that the AEDPA amendment to § 212(c) rendered Perez ineligible to apply because he was an aggravated felon. *See id.* The IJ denied the INS's motion and granted Perez § 212(c) relief. *See id.* A series of appeals ensued, resulting in a final order of deportation. *See id.* Perez filed suit in the Western District of Texas seeking mandamus and

injunctive relief, and the court construed the action as one for a writ of habeas corpus. *See id.* at 676, 680–81. Addressing the issue of § 212(c)'s retroactivity, the court noted, "The Fifth Circuit suggests that AEDPA § 440(d) applies retroactively, relying on its prior holding in *Williams.*" *Id.* at 682 (citing *Nguyen*, 117 F.3d at 207 (citing *Williams*, 114 F.3d at 83–84)). The court proceeded to recognize, however, that *Williams* actually deals with AEDPA § 440(a), not § 440(d). *See id.* The court concluded, "As such, the Court views the issue as unresolved in the Fifth Circuit." *Id.*

The *Perez* court adopted, without elaboration, the reasoning of the First Circuit in *Goncalves* in addressing the same issue. *See id.* (citing *Goncalves*, 144 F.3d at 126). The court stated, "After a thorough analysis of the question under *Landgraf* and *Hughes*, the First Circuit found that Congress did not intend its new provisions restricting such discretionary relief to apply retroactively and thus concluded that AEDPA § 440(d) did not apply retroactively." *Id.* (citing *Goncalves*, 144 F.3d at 133). In *Goncalves*, the First Circuit initially noted that Congress did not explicitly state that § 440(d) was to apply retroactively. *Goncalves*, 144 F.3d at 113. Utilizing the *Landgraf* analysis, the court looked to whether application of the statute would have a retroactive effect and determined that:

> The Attorney General's application of the new AEDPA restrictions takes away a form of relief that, while discretionary, is plainly substantive, and so implicates *Landgraf's* presumption against retroactivity.... AEDPA's restrictions on § 212(c) relief, as applied to Goncalves, thus clearly raise retroactivity concerns, requiring a close examination of AEDPA's text to determine whether Congress has expressly chosen to make its restrictions retroactive.

*Id.* at 128. In analyzing whether Congress intended that § 440(d) be applied retroac-

tively, the First Circuit followed general principles of statutory construction.

First, the court recognized that many provisions of the AEDPA contain explicit statements that they apply retroactively, while § 440(d) notably does not. *See Goncalves*, 144 F.3d at 128. " 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is ·generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Id.* at 129 (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446–47 n. 30, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). The First Circuit then "examine[d] AEDPA's legislative history to determine whether we have erred in our interpretation of the text." *Id.* at 131–33 (citing *Landgraf*, 511 U.S. at 262, 114 S.Ct. 1483). In confirming its analysis of § 440(d) through its legislative history, the court noted, as did the Third Circuit in *Sandoval*, that the Senate version of the bill contained express language of retroactivity, while the final version contained no such provision. *See id.* at 131; *see also Sandoval*, 166 F.3d at 241. The court also observed that three months before the IIRIRA amended § 440(d), the BIA ruled that Congress did not intend that § 440(d) apply retroactively, and yet Congress did not then take the opportunity to overrule the BIA. *See Goncalves*, 144 F.3d at 133. The Perez court concurred with the First Circuit, holding that § 440(d) of the AEDPA should not apply retroactively in that case. *See* 18 F.Supp.2d at 682.

One court in the Southern District of Texas, faced with a series of petitions for writs of habeas corpus brought by aliens in INS custody, has found that § 440(d) should not be applied retroactively to aliens who were facing deportation proceedings before the AEDPA was enacted. *See Garcia–Toscano*, C.A. No. B–97–183–02, slip op. at 2; *Regalado–Gutierrez*, C.A. No. B–97–183–03, slip op. at 2. *Cantu–Salinas*, the lead case in the series, held:

An analysis of the Act as a whole, using standard maxims of statutory construction, as well as the legislative history thereof, shows that Congress did not intend § 440(d) to apply to convictions occurring before its effective date. Moreover, a contrary interpretation would raise serious Due Process questions.

No. CA B–97–183, slip op. at 7. The court explained that the petitioner had a due process interest "in receiving meaningful consideration of his application." *Id.* at 6–7 (citing *Goncalves*, 144 F.3d at 128; *Nunez v. Boldin*, 537 F.Supp. 578, 584–85 (S.D.Tex.1982), *appeal dismissed*, 692 F.2d 755 (5th Cir.1982)). The court accordingly granted the writs and remanded the cases to the BIA for further proceedings consistent with the district court's opinion. *See Cantu–Salinas*, No. CA B–97–183, slip op. at 8–9; *Garcia–Toscano*, C.A. No. B–97–183–02, slip op. at 2; *Regalado–Gutierrez*, C.A. No. B–97–183–03, slip op. at 2.

 In line with the reasoning set forth in similar cases, the court finds that applying § 440(d) of the AEDPA in this case would contravene accepted principles of statutory construction. Generally, deportation statutes must be narrowly construed in favor of the alien. *See Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948); *Kwon v. INS*, 646 F.2d 909, 919 (5th Cir.1981). While AEDPA § 440(d) contains no express language of retroactivity, courts have found that application of § 440(d) to petitioners whose deportation proceedings were pending when the AEDPA was enacted would have an improper retroactive effect, affecting substantive rights. *See Goncalves*, 144 F.3d at 128; *see also Perez*, 18 F.Supp.2d at 682; *Cantu–Salinas*, No. CA B–97–183, slip op. at 6–7. Additionally, unlike the situation in most of the cases finding non-retroactivity, in this instance, the IJ had granted Homayun a waiver under § 212(c) before the AEDPA became effective. Thus, application of § 440(d) to Homayun

implicates his substantive rights by rescinding a waiver of deportation that had already been granted by the IJ before the change in the law, subject to appeal to the BIA. In view of the demonstrable retroactive effect, the presumption against retroactivity comes into play. Contrary to Cravener's argument, this case does not present a situation in which an alien would only be denied prospective relief as a result of the retroactive application of a new law. Under these circumstances, where Homayun had already been granted discretionary relief, and application of the new law operates to deprive him of that relief, the retroactive application of § 440(d) does not merely "upset expectations based on prior law."

Having found that application of § 440(d) to Homayun would have a retroactive effect, it must be ascertained whether Congress, nevertheless, intended that § 440(d) be applied retroactively. As recognized by other courts, principles of statutory construction and the legislative history of the AEDPA suggest that it did not. *See Sandoval*, 166 F.3d at 241–42; *Goncalves*, 144 F.3d at 128–31. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acted intentionally and purposely in the disparate inclusion or exclusion.' " *Sandoval*, 166 F.3d at 241 (quoting *Cardoza–Fonseca*, 480 U.S. at 432, 107 S.Ct. 1207). Contrary to Cravener's contentions, the *Goncalves* decision did not violate the "basic canons of statutory construction that require the meaning of statutes to be determined by examining words and structure of the statutes." Instead, the Goncalves court followed the guidelines set forth in *Landgraf* in reaching its decision—first looking for express language of intent, then, finding none, determining whether application of the new law would have a retroactive effect, and, finally, determining through traditional rules of statutory construction whether Congress intended the law to be applied retroactively. *See Goncalves*, 144 F.3d at 113, 126–34; *see also Landgraf*, 511 U.S. at 269–80, 114 S.Ct. 1483. As permitted by *Landgraf*, the court also consulted the legislative history to shed some light on congressional intent, finding further support for its conclusion. *See Goncalves*, 144 F.3d at 131 (citing *Landgraf*, 511 U.S. at 262, 114 S.Ct. 1483). The analysis in *Goncalves* comports with the approach set forth in *Landgraf* and with ordinary principles of statutory construction. Under the circumstances presented in the instant case, the court concludes that application of § 440(d) to Homayun would have an impermissible retroactive effect.

The Court, therefore, is of the opinion that Homayun's petition for writ of habeas corpus should be granted to the extent that the case is remanded to the BIA for a determination of whether the IJ's grant of a waiver of deportation to Homayun under former INA § 212(c) should stand. *See Goncalves*, 144 F.3d at 134; *Perez*, 18 F.Supp.2d at 683. Thus, finding remand to be appropriate, the court need not, at this juncture, address Homayun's constitutional challenges or the remaining issues raised in his habeas petition. *See id.* (citing *Goncalves*, 144 F.3d at 134). The BIA shall review the case on the merits and determine the propriety of the IJ's grant of a discretionary waiver of deportation to Homayun. *See id.*

## IV. Conclusion

Accordingly, Homayun's petition for writ of habeas corpus and motion for summary judgment are granted in part. Cravener's motion to dismiss and cross-motion for summary judgment are denied. This matter is remanded to the BIA for a determination on the merits of Homayun's application for a § 212(c) waiver under the standards in place prior to the enactment of the AEDPA.